UNITED STATES of America

v.

Gary DETHLEFS and Rebecca White, Defendants.

Crim. No. 94–34–P–C.

United States District Court, D. Maine.

April 6, 1995.

Chapman, Jr., U.S. Dept. of Justice Northern Crim. Enforcement Sec., Washington, DC, for U.S.

Neal K. Stillman, Portland, ME, Richard M. Egbert, Boston, MA, for defendant Gary Dethlefs.

Stephen J. Schwartz, Jack L. Schwartz, Portland, ME, for Rebecca B. White.

## MEMORANDUM AND ORDER DENYING DEFENDANTS DETHLEFS AND WHITE'S MOTION TO SUPPRESS

GENE CARTER, Chief Judge.

In this criminal matter, Defendants face charges of conspiring to engage in drug trafficking, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and of conspiring to avoid payment of federal income taxes, in violation of 18 U.S.C. § 371. Two of the nine defendants, Gary Dethlefs and Rebecca White (collectively "Defendants"), seek an Order from this Court suppressing all evidence obtained by the government from the execution of three search warrants on July 20, 1994.

On July 19, 1994, on the basis of the affidavit of Internal Revenue Service ("IRS") Special Agent James T. Wallwork, which incorporated a forty-seven page affidavit of Drug Enforcement Agency ("DEA") Special Agent John O'Donoghue, United States Magistrate Judge Karol of the District of Massachusetts issued two search warrants. One warrant authorized a search of the business offices of G & A Development Corporation ("G & A"), of which Dethlefs is president and a stockholder and White is the corporate clerk, located in Norton, Massachusetts. The other warrant authorized the search of a residence in Mansfield, Massachusetts known as "the Farm," which is owned by White and has been used as a residence by both Defendants.

The affidavits supporting the warrants provide the following information. O'Donoghue interviewed and recounted information from other interviews of six confidential informants and one named informant. The interviews of the informants took place, for the most part, in 1993 and 1994, and describe

George T. Dilworth, Jonathan A. Toof, Asst. U.S. Attys., Portland, ME, James W.

a large-scale drug trafficking conspiracy which was established and "flourished" in the 1980s. Some of the confidential informants had been direct participants in the conspiracy and others were acquainted with participants. The informants provided information regarding the transportation of and trafficking in drugs in the mid-to-late 1980s with some references to activity in the period from 1990 to 1992. The affidavit also recounts three instances in which a participant in the conspiracy was arrested or detained by law enforcement officers; these occurred in 1988, 1989, and 1990.

The affidavits state that agents interviewed David Woods, who described himself as the "internal controller" of G & A and of Greenlane Construction Company ("Greenlane"), another corporation of which Dethlefs is a stockholder and president and White is corporate clerk. Woods provided extensive information regarding the "large amount of liquidity" of the corporations through sizeable cash contributions by Dethlefs; an arrangement with a lumber company, in which G & A injected large amounts of cash and maintained a large credit balance; large cash purchases, such as heavy construction equipment, by Dethlefs on behalf of the corporation; and the purchase by Dethlefs of large amounts of stock in a Connecticut waste disposal company.[1] The affidavits describe information obtained from various sources regarding the cash purchase and repair of two boats. The IRS also provided information regarding the tax histories of Defendants, including the fact that Dethlefs has not filed a personal income tax return since at least 1989 and that White last filed a return in 1991, in which she reported only $3,300 in adjusted gross income.

The warrants authorized the seizure of "those items described in the affidavit of James T. Wallwork which is attached hereto and incorporated herein by reference." The Wallwork affidavit includes a lengthy description of the items to be seized:

I. As to both premises:

A. Documents relating to money laundering and tax fraud, namely, employment, sales, and inventory records relating to Greenlane Corporation, G & A Development Corporation, and/or persons or entities controlled by them; documents relating to the ownership, control, and development of property owned or purchased by or in the names of Gary Dethlefs, Rebecca White, Stuart Smith, G & A Development Corporation, Greenlane Corporation, and/or persons or entities controlled by them, including account statements, money drafts, letters of credit, money orders, cashier's checks, passbooks, and certificates of deposit; correspondence to and from Gary Dethlefs, Rebecca White, Stuart Smith, G & A Development Corporation, Greenlane Constructions, and/or persons or entities controlled by them; tax returns and records relating to the preparation of tax returns pertaining to Gary Dethlefs, Rebecca White, Stuart Smith, G & A Development Corporation, Greenlane Construction, and/or persons or entities controlled by them.

B. Documents relating to drug trafficking, namely, phone toll records, address books, safe deposit keys and records, and rental documents and keys for self-storage facilities.

C. Drug proceeds and physical evidence of the purchase of assets with drug proceeds, namely, cash, financial instruments, photographs, the inventory of G & A Construction [sic] and Greenlane Construction Corporation, and fine wines.

Wallwork affidavit (Docket No. 81, Exhibit D) at 2–3. Further, the warrant authorized the seizure of computer equipment, software, and disks from the G & A office. The searches yielded a large quantity of items, mostly documents, seized from the premises.[2]

---

1. Many of Woods' allegations were confirmed through interviews with other persons such as the heavy equipment dealers, bank employees, and other persons who have had business dealings with either G & A or Greenlane.

2. The third warrant challenged here was issued on July 20, 1994, but only after the first two warrants had been executed. During the search of the Farm, officers saw, in plain view, a Macintosh computer with various peripheral equipment and disks. The government then sought, and the Magistrate Judge granted, an additional

Defendants assert three bases for an Order suppressing the large volume of documents seized in these searches: (1) that the description of items to be seized was not stated with sufficient particularity; (2) that the warrants were not supported by probable cause since the information contained in the affidavits was both unreliable and stale; and (3) that the seizure of the Macintosh computer was "fruit" from the first illegal search of the Farm.

## I. DISCUSSION

### A. The Particularity Requirement

■ Defendants argue that warrants' descriptions of items to be seized in the searches were not set forth with sufficient particularity, resulting in "general searches" of both premises and seizure of "basically every piece of paper," in violation of the Fourth Amendment.[3] The government responds that the warrants did satisfy the particularity requirement and that, even if the warrants were defective, the search is nonetheless valid under the "good faith" exception to unreasonable searches set out by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

■ The "particularity requirement" of the Fourth Amendment is intended to prohibit "general searches." The description of items to be seized should be sufficiently specific to preclude the exercise of unfettered discretion, or "rummaging," by the executing officer. *United States v. Morris*, 977 F.2d 677, 681 (1st Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1588, 123 L.Ed.2d 155 (1993). The determination of whether a description in a warrant is sufficiently particular depends upon the circumstances of each case, including the offense charged. *Id.* at 681.

The Court of Appeals for the First Circuit has devised a two-part test to determine whether a warrant states, with adequate particularity, the items to be searched for and seized:

first, the degree to which the evidence presented to the magistrate establishes reason to believe that a large collection of similar contraband is present on the premises to be searched, and, second, the extent to which, in view of the possibilities, the warrant distinguishes, or provides the executing agents with criteria for distinguishing, the contraband from the rest of an individual's possessions.

*U.S. v. Fuccillo*, 808 F.2d 173, 176 (1st Cir.), *cert. denied* 482 U.S. 905, 107 S.Ct. 2481, 96 L.Ed.2d 374 (1987). Here, of course, the warrant did not provide for the seizure of "contraband" in the sense of illegal goods but, rather, sought documentation that would provide investigators with information regarding not only drug trafficking but also the source of Defendants' income and the manner in which Defendants spent their money. Accordingly, this test is of limited relevance here.

The First Circuit has also held that broad categories of items such as "books, papers, ... letters, correspondence, documents," were inadequate in a warrant issued in an investigation of violation of federal student loan regulations. *In re Application of Lafayette Academy, Inc.*, 610 F.2d 1, 3 (1st Cir.1979). Although comparably broad categories are provided in the warrants at issue here, the result is not the same as in *Lafayette*, where the seizure of *all* documents encompassed many which were not likely to provide evidence of criminal activity. Here, by contrast, the nature of the offenses charged permit a far greater number of documents to be seized since evidence of drug trafficking and tax violations can include a significant variety of documents, such as those that simply describe the manner in which Defendants paid for expenses and purchases on a day-to-day basis.[4] The warrants,

search warrant authorizing the seizure of these items.

**3.** The Fourth Amendment of the United States Constitution provides, in pertinent part,

[N]o Warrants shall issue, but upon probable cause ... and particularly describing ... the ... things to be seized.

U.S. Const.Amend. IV.

**4.** There is also a count for criminal forfeiture of items purchased with drug proceeds. Accordingly, seizure of all money orders and other evidence of how funds were spent was appropriate.

which clearly identify the alleged offenses that were the object of the investigation, provided sufficient guidance to the executing officers as to what items to seize. Therefore, it is of little assistance in this case to compare the warrants here with those in cases where the substantive offense calls for more specific evidence of criminal activity.

This case can be contrasted with, for example, *United States v. Diaz,* 841 F.2d 1 (1st Cir.1988), where the government was investigating a specific allegation of bribery but the warrant directed that nearly all records in the defendants' company office be seized. The *Diaz* panel concluded that there was no basis for requesting "all bank account records" and, accordingly, ordered the suppression of those items, while permitting those items constituting evidence relating specifically to the bribery allegations to be admitted. *Id.* at 4. In another case where the First Circuit concluded that particularity requirements were not met, the warrant directed the executing officers to seize "[c]artons of women's clothing" and, although it was known to the investigating agents, only certain cartons contained the stolen goods and those cartons could be easily distinguished from the remaining cartons. *United States v. Fuccillo,* 808 F.2d 173, 174 (1st Cir.1987). Here, it is possible that nearly all of the items found on the two premises could be linked to money laundering and drug trafficking and it would be impossible, through the language of a search warrant, to provide executing officers with the means to distinguish such evidence from that which is unrelated to the charges.

## B. Staleness of the Information

■ Defendants further allege that, because the warrants were not based upon probable cause and were, consequently, defective, all evidence seized during the execution of the warrants must be excluded. Specifically, Defendants argue that, although the warrants were issued upon lengthy affidavits describing a long-term drug conspiracy, all of the information contained in the affidavits is "stale" because it relates to acts that are alleged to have taken place years prior to the issuance of the warrants.

The United States Supreme Court has addressed the issue of staleness on only one occasion. In *Sgro v. United States,* 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932), the Court reviewed the issuance of a warrant which was based upon information obtained three weeks earlier and observed:

> While the statute [at issue there] does not fix the time within which proof of probable cause must be taken by the judge or commissioner, it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause.

*Id.,* 287 U.S. at 210, 53 S.Ct. at 140.

By contrast, the First Circuit, on many occasions, has addressed the issue of the staleness of information provided in an application for a warrant. The staleness relates to a specific aspect of the greater concept of "probable cause," which is satisfied if "given all the circumstances set forth in the affidavit ..., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a *fair probability* that contraband or evidence of a crime will be found in a particular place." *United States v. Bucuvalas,* 970 F.2d 937, 940 (1st Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1382, 122 L.Ed.2d 758 (1993) (quoting *Illinois v. Gates,* 462 U.S. 213, 218, 103 S.Ct. 2317, 2321–22, 76 L.Ed.2d 527 (1983)). In effect, the inquiry asks whether, when viewing the supporting affidavit in a "practical, 'common sense' fashion," the information supporting the warrant is recent enough to be considered reliable evidence of whether certain items may be found at the location to be searched. *Bucuvalas,* 970 F.2d at 940.

■ The staleness of information cannot be determined merely by measuring the length of time that has passed since the occurrence of the acts described. The First Circuit has set out a series of questions that must be resolved to determine whether the information rendered the warrant invalid. Specifically, the court of appeals requires this Court to consider the relative staleness of information in relation to:

(1) the nature of the suspected criminal activity (discrete crime or "regenerating

conspiracy"), (2) the habits of the suspected criminal ("nomadic" or "entrenched"), (3) the character of the items to be seized ("perishable" or "of enduring utility"), and (4) the nature and function of the premises to be searched ("mere criminal forum" or "secure operational base").

*Bucuvalas,* 970 F.2d at 940 (making reference to factors discussed in *Andresen v. State,* 24 Md.App. 128, 331 A.2d 78 (1975), *aff'd,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976)). The case law in this and other circuits clearly demonstrates that, out of the above-listed factors, the nature of the offense is the most determinative of whether information is stale. Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 3.7(a) at 80.

After evaluating the circumstances in this case under the factors described in *Bucuvalas,* it appears that this Court should take a broad view of the relative staleness of the information in the affidavits. Specifically, the crime being investigated was an extensive, long-term drug conspiracy that had been ongoing since the early 1980s and was still in existence in the early 1990s. The Defendants are more properly characterized as "entrenched" than "nomadic." Defendant White is alleged to own the Farm and is an officer of G & A. Defendant Dethlefs is alleged to reside at the Farm and is a central figure in G & A operations. Both Defendants are alleged to have central roles in the drug trafficking and money laundering conspiracies. The items to be seized were documents and, therefore, not perishable. Finally, the Farm was alleged to be the center of operations for the drug trafficking conspiracy and G & A is alleged to have served as a front for laundering proceeds from drug sales.

With this legal framework in mind, this Court will assess the validity of the information supporting the search warrants here. As described above, the O'Donoghue affidavit provides summaries of information obtained from six confidential informants who either directly participated in trafficking in drugs for Defendants or were closely associated with one of the nine Defendants charged in the conspiracy. The interviews, which were conducted during 1993 and 1994, provide information about the operation of the conspiracy in the late 1980s and early 1990s.[5] The one named informant stated that she saw Dethlefs, co-Defendant David White, and others loading boxes from a garage onto Dethlefs' truck as late as 1993; there is nothing, however, to confirm that there were drugs or other contraband in the boxes. Beyond the information of the confidential informants, and the information obtained from certain arrests and detentions of conspiracy participants·in the late 1980s and 1991, there is no information which establishes, or even suggests, a "fair probability" that, in 1994, drug activity continued at the Farm or that evidence of any form of criminal activity could be found there.

Although the nature of the premises to be searched and items to be seized suggest that this Court take a liberal approach to the relative staleness of the information serving as a basis for the warrants here, it does not require this ·Court to completely disregard the age of the information. The simple fact remains that, at the time the warrants were issued and executed, there was no information regarding drug activity that occurred within the two previous years. The vast majority of the information was well over three and four years old.

However, the inquiry does not end with the determination that certain information may be too stale to be reliable since "[s]taleness does not undermine the probable cause determination if the affidavit contains information that updates, substantiates, or corroborates the stale material." *Bucuvalas,* 970 F.2d at 940. In *Bucuvalas,* the First Circuit employed this analysis and found the otherwise stale information, obtained four

---

**5.** There is reference to conduct as recent as 1993, a year prior to the issuance of the warrants, in the portion of the O'Donoghue affidavit discussing the interviews with CI–1, who actively participated in the conspiracy until "it" entered a drug rehabilitation program in 1988. CI–1 claimed during a July, 1993 interview that Deth-

lefs continued to send co-defendant Richard Record "up to 500 pounds of marijuana per week." O'Donoghue, however, dismisses this information as mere "bar talk" by CI–1 and, therefore, unreliable, since CI–1 had cut its ties with Dethlefs in the late 1980s.

years earlier, was sufficiently "revived" by new information.

The government argues that the statements provided to investigators regarding G & A revive the otherwise potentially stale information provided by the informants. Although the more recent information may be suggestive of money laundering and tax evasion, "when a significant period of time has elapsed, mere furtive movements, or other generally suspicious activity will not suffice to show the requisite continuation" of criminal activity. Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 3.7(a) at 81. *See also Emery v. Holmes*, 824 F.2d 143, 149 (1st Cir.1987) (the mere sighting by police of car which had previously contained marijuana was inadequate evidence to revive probable cause of expired warrant to seize the car). There is nothing in Woods' statements to investigators to suggest that evidence of criminal activity could be found at the Farm or even that the drug trafficking operation continued. The affidavits do not mention any surveillance or other investigation beyond interviewing the informants. In fact, there is no indication in the affidavits that investigating agents knew whether Defendants continued to *reside* at the Farm.[6] Therefore, this information falls far short of that required to revive the otherwise stale allegations of the informants.[7] *See e.g., Bucuvalas*, 970 F.2d at 941 (recent evidence that defendants were seen using the office, that informant saw relevant documents at the office, and that officers observed illegal device at defendants' establishment was sufficient to revive stale

information in warrant to search the office); *United States v. Hershenow*, 680 F.2d 847, 854 (1st Cir.1982) (recent affidavits of a defendant's secretary supported the belief that there was the "probability of a continuing violation").

A case providing a good contrast to that here is the recent decision of the Eleventh Circuit in *United States v. Harris*, 20 F.3d 445 (11th Cir.), *cert. denied sub nom. Vegas v. United States*, — U.S. —, 115 S.Ct. 612, 130 L.Ed.2d 521 (1994). Like the case at bar, *Harris* involved a multi-defendant, long-term narcotics, weapons, and money-laundering conspiracy in which it was alleged that the defendants used a business to cover drug proceeds. In that case, a defendant argued that, at the time of the warrant, the most recent information indicating criminal activity was obtained from a search of the business' premises eighteen months before the warrant was issued and that most of the information obtained in the investigation referred to acts that took place over two years earlier. The Court concluded that the information was not stale since the affidavit described a "longstanding and protracted criminal activity" and that the affidavit described other activity occurring after the search of the business. More significantly, investigators determined that, as of a few days prior to the warrant application, surveillance revealed that the defendant continued an ongoing relationship with the co-conspirators and that they met at the defendant's house, suggesting that the conspiracy continued and that drug-related evidence could be found at the defendant's house. *Id.* at 451.

---

**6.** The plaintiff in *Emery v. Holmes*, 824 F.2d 143 (1st Cir.1987), brought an action under 42 U.S.C. § 1983 against police officers who obtained and executed a warrant to seize the plaintiff's car based on information regarding the car's use in criminal activity several months earlier, at a time when the car belonged to someone other than the plaintiff. The Plaintiff alleged that this erroneous seizure of his car resulted from the execution of a warrant in the absence of probable cause, constituting a violation of his rights under the Fourth Amendment. Using case law from criminal appeals as a guide, the panel concluded that, due to the potentially stale information that served as the basis for the warrant, the plaintiff had generated a genuine issue of material fact regarding the existence of probable cause, and the denial the officers' motion for summary judgment was correct. *Id.* at 149.

**7.** The information regarding G & A in the affidavits not only fails to revive the "stale" information regarding drug trafficking, but it also fails to serve as a independent basis for probable cause to issue a warrant to search the offices of G & A and seize business records. Had the other information regarding Defendants' drug trafficking operation been current, there would have been probable cause under a "totality-of-the-circumstances" analysis, to infer that G & A was somehow linked to the drug conspiracy and that evidence of criminal activity could be found at its offices. *United States v. Ciampa*, 793 F.2d 19, 24 (1st Cir.1986). Therefore, the staleness of the information renders the warrants to search both the G & A offices and the Farm invalid.

As discussed above, there is simply nothing in these affidavits of sufficient quality to establish a fair probability that Defendants continued to engage in drug-related activity and/or that evidence of criminal activity could be found at either location. Before law enforcement officials may enter a person's residence and seize the volume of items taken here, there must be probable cause that, *at the time of the execution of a search warrant,* the premises are likely to contain contraband or evidence of a crime. It cannot be inferred that simply because a house served as a location for illegal activity some years ago, it continues to do so.

This Court has endeavored to find any case in which a federal appeals court has upheld the validity of a warrant based on information describing acts occurring over two years earlier in the absence of new evidence suggesting continuity of the crime. Several federal courts of appeals have addressed the staleness of information supporting a search warrant, but those cases involve the relative weight of information regarding acts occurring days or weeks, and occasionally months, but never years, prior to the issuance of the warrant. *See generally* LaFave § 3.7(a). In those cases where extensive time has passed, such as *Bucuvalas,* courts have based the continuing validity of the information on the presence of new information suggesting the continuity of the crime.

### C. *"Good Faith" Exception*

■ The government argues that, even if the warrant relied upon stale information or was not sufficiently particular, the "good faith exception" set out by the Supreme Court in *U.S. v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), allows the admissibility of the evidence seized in the execution of the warrant. In the *Leon* case, the Supreme Court transmogrified the exclusionary rule of the Fourth Amendment to permit the admissibility of evidence obtained through objectively reasonable or good faith reliance on a defective search warrant issued by a magistrate, even if the result is to admit evidence seized in the absence of probable cause. *Id.* at 926, 104 S.Ct. at 3422; *United*

*States v. Bonner,* 808 F.2d 864, 867 (1st Cir.1986) ("The exclusionary rule should be limited to those situations where its remedial objectives are best served, *i.e.,* to deter illegal police conduct, not mistakes by judges and magistrates."), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987). This "good faith exception" to the exclusionary rule swings broadly and does not require a searching inquiry into the reasonableness of the officers' reliance on the warrant. *Leon,* 468 U.S. at 922, 104 S.Ct. at 3420. Suppression is an appropriate remedy only in the absence of good faith, which is demonstrated by any one of four situations:

> [ (1) ] the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; ... [ (2) ] the issuing magistrate wholly abandoned his judicial role; ... [ (3) ] [the] warrant [is] based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" ... [or (4) ] [the] warrant [is] so facially deficient ... that the executing officers cannot reasonably presume it to be valid.

*Id.* at 923, 104 S.Ct. at 3421 (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)).

Defendants argue here that, because the warrant failed to provide sufficient guidance "to executing officers in their determination of what items are authorized to be seized," it was so facially deficient that the executing officers could not reasonably presume it to be valid. Defendants' Joint Motion to Suppress (Docket No. 80) at 6. As this Court discussed above, the warrants stated the items to be seized with sufficient particularity. The invalidity of the warrants here stems from the fact that they were not based upon probable cause due to the reliance on stale information.

However, this Court concludes that, despite the lack of probable cause, the warrants at issue are not "so facially deficient" as to establish a lack of good faith on the part of the executing officers. Although the magistrate judge erred in issuing a warrant upon affidavits that did not contain current information suggesting that the drug conspiracy

continued and that searches of the premises were likely to yield evidence of the conspiracy, such defects are not of the kind which would alert an executing officer. The lengthy affidavits document an extensive, long-term drug conspiracy. An officer may reasonably rely on such information as suggestive of probable cause and cannot be expected to note the particular time frame of the many acts alleged. *See, e.g., United States v. Rugh,* 968 F.2d 750 (8th Cir.1992) (upholding application of good faith exception to search of defendant's house although the affidavit in support of the warrant provided information regarding acts that occurred over sixteen months earlier and was, therefore, stale); *United States v. Webster,* 960 F.2d 1301, 1307 (5th Cir.) ("[T]he officers' reliance on the warrant was reasonable [despite the potentially stale information contained in the affidavit], especially given the allegations of long-standing, ongoing criminal activity."), *cert. denied sub nom. Nelson v. United States,* — U.S. —, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992).

This case bears a resemblance to one decided by the United States Court of Appeals for the Fifth Circuit several years ago. *United States v. Craig,* 861 F.2d 818 (5th Cir.1988). In *Craig,* the defendant argued that the search warrant issued there was defective on the basis that the supporting affidavit contained "dated" information and, therefore, could not establish probable cause. The defendant further alleged that the information was so stale that no police officer could believe that the warrant was supported by probable cause.[8] The district court granted the motion to suppress and, on appeal, the Fifth Circuit reversed. The panel reviewed the application of the good faith exception and concluded, "Although certainly not a thing of beauty, the affidavit is not so lacking in 'indicia of probable cause' as to render objectively reasonable good faith in a warrant issued pursuant to it impossible." *Id.* at

823. In reaching that conclusion, the panel considered the "long-standing [13 years] ongoing pattern of criminal activity" and the nature of the evidence, which consisted of bottles of medications originally prescribed for the defendant's patients. *Id.* at 822.

This Court reaches the same conclusion, with comparable reluctance. Applying the analysis suggested in *Bucuvalas* to determine the relative staleness of the information in the affidavit, it is clear that this Court should not take an overly-restrictive view of the executing officers' reasonable conclusions regarding the warrants' validity. The affidavits suggest a drug conspiracy, formed in the early 1980s, that grew over the years and involved several individuals and the transportation of drugs over extensive distances. The individuals whose residence and business office were to be searched were "entrenched" central figures in the alleged conspiracy. The material to be seized consisted of documents spanning a long period of time, which the officers could have concluded would be stored by Defendants at either or both locations. Finally, the premises to be searched consisted of a residence and business offices, both of which were linked, in the past, to criminal activity in the supporting affidavit. Accordingly, the warrants were not so facially deficient or lacking in indicia of probable cause as to establish a lack of objective good faith on the part of the executing officers.[9] As a result, this Court is constrained to deny Defendants' Motion.

## II. CONCLUSION

Accordingly, Defendants' Joint Motion of Gary Dethlefs and Rebecca White to Suppress Evidence is *DENIED.*

So *ORDERED.*

---

8. The affidavit alleged certain acts occurring eight months prior and contained some recent information as well. *United States v. Craig,* 861 F.2d 818, 822 (5th Cir.1988).

9. Defendants argue that since the July 20, 1994, search at the Farm was based upon a defective warrant, the discovery, in "plain view," of the Macintosh computer was the result of an unlawful search and, therefore, should be excluded as

"fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). Since this Court concludes that the search of the Farm was lawful because it was based on the executing officers' good faith reliance on a facially valid warrant, the Court does not decide this final issue in Defendants' Motion.