**UNITED STATES of America**

v.

**Bruce L. CRAIG, M.D.**

**Crim. No. 87–10002–01.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

Nov. 19, 1987.

Joseph Jarzabek, Asst. U.S. Atty., Shreveport, La., for U.S.

Ossie Brown and Thomas D'Amico, Baton Rouge, La., for Craig.

## RULING

LITTLE, District Judge.

On 4 November 1987 counsel for defendant filed a motion to suppress illegally obtained evidence and the fruits thereof. The merits of the motion must be moved aside while we consider the formal defense from the Government of untimeliness.

By minute entry dated 12 March 1987 the trial in this matter was scheduled for 16 November 1987. The minute entry also authorizes the defendant to file motions not later than 20 April 1987. The Government was authorized to answer any motion at any time but no later than 18 May 1987.

Two days after the motion deadline defendant filed a number of pleadings, only one of which deserves our comment. In a pleading styled "Defendant's Request for Notice of Government's Intention to Use Evidence" the defendant asks the Government to tell him about any evidence which the Government may be entitled to discover under Rule 16, Federal Rules of Criminal Procedure, in order to afford him an adequate period of time to file motions to suppress evidence under Rule 12(b)(3). The order tethered to the motion provides:

> It is hereby ordered, pursuant to Federal Rule of Criminal Procedure 12(d)(2), that the United States comply with the defendant's request for notice of the Government's intention to use evidence on or before the 1st day of November 1987.

The order is dated 10 June 1987.

The crux of the defendant's motion is the frailty of an affidavit of one Phillip W. Wagner, employed by the Louisiana State Police Criminal Investigative Bureau, which affidavit was used to obtain a search warrant issued by a district judge in the 35th Judicial District Court of Grant Parish, Louisiana. The affidavit is dated 9 October 1986 and the warrant issued on the same day. Defendant further claims that the evidence obtained by use of the search

warrant forms the basis for yet another search warrant issued by a federal magistrate.

Arguments from counsel clearly reveal that the disclosure of the affidavits in question occurred in April of 1987. Counsel for defendant claims that prudence justified waiting until after 1 November 1987 in order to file the motion to suppress. Defendant's brief indicates that the attorneys waited until that date in order to "insure that all evidence deemed necessary for a suppression motion be received." In other words, defendant's attorneys contemplated filing but one motion and yet their motion for the information clearly states, by use of the plural "motions," that more than one motion was considered.

 Neither party to this litigation cites any authority on the issue of untimeliness. This Court is unconvinced that there is any justifiable reason for the pokiness of defendant's counsel. Such lethargy cannot be tolerated but the sanction of non-consideration would visit an unwarranted injustice upon the person of the defendant. Therefore, no authorities having been cited by the Government to the contrary, it is this Court's opinion that defendant's motion is untimely but must, in the interest of true justice, be considered by this Court.

 Defendant asserts that the information in the Wagner affidavit of 9 October 1986 is a fragile foundation for issuance of a search warrant, so much so that the fourth amendment to the United States Constitution has been violated. That amendment, pregnant with protective provisions, provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The adage, "the proof is in the pudding," has no application to an analysis of the validity of a search warrant. The fact that contraband is actually found as a result of the utilization of a search warrant does not clothe the issuing process with legality. It's not the pudding that is subject to examination, it's the proof. Thus, was there probable cause as that term is employed in the fourth amendment for the state judge to issue the warrant to search the defendant's premises?

 The warrant-issuing official was presented with an affidavit of a state police officer. Evidence that a crime had been committed was attested to by the policeman. His conclusions were molded by evidence given him by the defendant's former spouse, one Terri Craig. According to the affidavit, which can be the only genesis of probable cause, *United States v. Anderson*, 453 F.2d 174 (9th Cir.1971), the ex-Mrs. Craig provided the following:

> Terri Craig, a resident of Grant Parish and Dr. Craig's wife, has told your affiant that during the past three years, Dr. Craig, on a regular basis, dispensed Morphine and Demerol at a cost of Forty Dollars ($40.00) per injection to many different people, who would come to their home, the above mentioned premises.... Mrs. Craig has also observed Dr. Craig take drugs from patients and bring them home. Mrs. Craig is a licensed practical nurse.

Thus, the illegal activity took place on a regular basis "during the past three years." The affidavit does not reflect when Mrs. Craig told the affiant that the defendant was dispensing substances from their home. Thus, there is no definite beginning of the three-year period. Further, there is no indication of any sort as to the date when an illegal event occurred most proximal to the date of the affidavit. The void created by the absence of that information is deep. A finding of probable cause cannot result when there are no illegal activities described which are closely related to the time when the warrant was issued. Using the parlance of the criminal law, the defense asserts that the facts are stale, so much so that the warrant was issued improvidently.

Confining our attention to the issue of staleness, we find an elderly Supreme

Court case instructive if not directive. In *Sgro v. United States,* 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932) the court considered a warrant issued as a result of Mr. Sgro's alleged violation of the National Prohibition Act. When considering the vitality of a warrant issued to replace one which had expired by its terms, and which had been granted on the basis of alleged facts not updated but merely reiterated, the court remarked:

> The proceeding by search warrant is a drastic one. Its abuse led to the adoption of the fourth amendment and this, together with legislation regulating the process, should be liberally construed in favor of the individual.

*Sgro,* 287 U.S. at 210, 53 S.Ct. at 140, 77 L.Ed. at 287. The court went on to describe the type of proof necessary to satisfy the requirements of probable cause.

> While the statute does not fix the time within which proof of probable cause must be taken by the judge or commissioner, it is manifest that the proof must be a fact so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case.

*Sgro,* 287 U.S. at 211, 53 S.Ct. at 140, 77 L.Ed. at 263. The facts described in *Sgro* occurred no sooner than 6 July. The warrant issued on 27 July. Proof of probable cause of a violation at or near the time of issuance of the warrant was lacking. The evidence was suppressed.

Only in the concurring opinion of Mr. Justice McReynolds does the word "stale" appear. That word is used in a pejorative sense to render impotent warrants issued on information which "became stale by passage of time ..." *Sgro,* 287 U.S. at 215, 53 S.Ct. at 142, 77 L.Ed. at 265. As an aside, Mr. Justice McReynolds opines:

> I think no search warrant should issue upon an affidavit more than ten days old. After attaining that age statements therein cannot properly indicate existing conditions.

*Sgro,* 287 U.S. at 216, 53 S.Ct. at 140, 77 L.Ed. at 265.

More recently, the Eighth Circuit has summarized the law in this area.

> It is axiomatic by now that under the fourth amendment that probable cause upon which a valid search warrant must be based must exist at the time in which the warrant was issued, not at some earlier time.

*United States v. Steeves,* 525 F.2d 33, 37 (8th Cir.1975). Obviously, the time when the fact-supporting allegations of illegal conduct occurred is critical and must be weighed by the circumstances of the case. The affiant, State Policeman Wagner, has no personal knowledge of the facts. His opinion is predicated upon the statements of the defendant's former spouse. The illegal acts occurred "during the past three years ... on a regular basis...." But when was the last illegal act performed? When did the three-year period begin? The methodology to be employed in answering these questions can be found in the Eighth Circuit case of *United States v. Button,* 653 F.2d 319 (8th Cir.1981). No Fifth Circuit authorities hold to the contrary. In *Button,* a warrant was issued on an affidavit in which the affiant claims to have received information that the defendant possessed narcotics "over the past six months." That case cited with approval the interpretation which must be given to warrant requesting language wherein the time of the offense is described as having occurred within a given period. It must be presumed that the transactions took place in the most remote part of the time span. If this were not a proper interpretation, then any ancient evidence could be used by merely describing it as falling within a period of time ending with the current date.

Courts also must consider the nature of the evidence subject to quest. Controlled substances are peripatetic properties. They are easily hidden, readily consumed and subject to trafficking. The objects must move in illicit commerce as they serve no aesthetic purpose whatsoever. See *United States v. Steeves, supra,* at 38. Cases dealing with long-term use of non-

lethal objects are not material or convincing. Compare *United States v. Brinklow,* 560 F.2d 1003 (10th Cir.1977).

■ To suggest, as does the Government, that a counting of days is a mechanical exercise and is less important when the criminal activity is protracted and continuous has merit but is not applicable to this matter. The argument is advanced that mere passage of time will not dissipate probable cause. Cited to support that assertion is *United States v. Domme,* 753 F.2d 950 (11th Cir.1985). But that case is not helpful to the Government. The affidavit in *Domme* recited criminal activities in 1979, 1981, 1982 and July and April of 1983. The warrant issued in late May of 1983. The court rejected a staleness argument. The affidavit revealed that violations occurred during specific times up to one month prior to the issuance of the warrant. Further, special and peculiar facts were alleged to support the position that the objects subject to seizure were still in the possession of the defendants. In the case under consideration one cannot reasonably and fairly conclude that the drugs were dispensed more recently than three years before the affidavit was signed or that those drugs were still in the possession of the defendant or likely to be in the defendant's possession.

The Wagner affidavit is composed of six numbered paragraphs, each of which recites information for the consideration of the state judge prior to granting the search warrant. We have discussed the first paragraph which is the information obtained from Terri Craig. The remaining paragraphs neither collectively nor singularly can resuscitate the doomed warrant. A brief analysis of each paragraph is in order.

■ Charles Mask, brother-in-law of the defendant, told the affiant that on a date certain he observed "a large quantity of drugs in pill bottles bearing different names in Dr. Craig's bathroom." A chary official would not grant a warrant on such flaccid evidence. Questions precipitated by reading of the Mask remarks include: Can Mask identify controlled dangerous substances? If so, what kind of drugs did he identify? Were the different names on the pill bottles a reference to the pills or to the person for whom the pills were prescribed or ordered?

■ The third paragraph is a description from the affiant of information obtained from Gloria West, another former spouse of the defendant. Mrs. West told the affiant that during the ten-year period she was married to the defendant that she "did observe him take drugs from patients and bring them home." She also told the affiant that in February of 1983 the defendant visited her in her home and "left ten (10) fifteen milligram (15 mg.) vials of Morphine." Lack of specificity as to the time sounds the death knell for this evidence.

■ The fourth, fifth and sixth paragraphs are also unimpressive. In the fourth paragraph the affiant states that the defendant is the subject of a federal grand jury investigation. In the fifth, the affiant reports that the defendant is scheduled to appear before the Louisiana State Board of Medical Examiners for alleged unethical medical practices. In the sixth paragraph the affiant states that he has contacted four governmental agencies and all of them state that the defendant is in violation of state and federal narcotics laws. Probable cause does not blossom from the indefiniteness and immateriality of the information presented by the affiant.

It may be redundant but not unnecessary to repeat a quotation from the *Sgro* case:

> The proceeding by search warrant is a drastic one. Its abuse led to the adoption of the fourth amendment and this, together with legislation regulating the process, should be liberally construed in favor of the individual.

*Sgro,* 287 U.S. at 210, 53 S.Ct. at 140, 77 L.Ed. at 287. While it may be true that Bruce Craig illegally dispensed drugs from his home, proof of that possibility may not be accomplished through intrusion by illegal search and seizure.

The motion to quash is GRANTED in substance. The extent of the evidence to be eliminated may be the subject of a sub-

sequent motion and may require an evidentiary hearing.