**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Bruce L. CRAIG, Defendant–Appellee.**

No. 88–4246.

United States Court of Appeals, Fifth Circuit.

Dec. 13, 1988.

---

John A. Broadwell, Asst. U.S. Atty., Joseph S. Cage, U.S. Atty., Shreveport, La., for plaintiff-appellant.

Thomas C. Damico, Ossie Brown, Baton Rouge, La., for defendant-appellee.

Before POLITZ, GARWOOD, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Defendant Bruce L. Craig ("Craig") was indicted on 21 counts of unlawfully dispensing controlled dangerous substances in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Prior to trial, the district court granted Craig's motion to suppress evidence seized pursuant to state and federal search warrants on the ground that the two warrants were not supported by probable cause. 674 F.Supp. 561. On the government's motion for reconsideration, the court also ruled that the evidence was not admissible under the exclusionary rule's good-faith exception established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Because we find that the affidavit underlying the warrants was sufficient to support a good-faith belief that the warrants were valid, we reverse the district court's order suppressing the evidence seized pursuant to the two warrants.

## I.

On October 9, 1986, Phillip Wagner ("Wagner"), an officer with the Louisiana State Police Criminal Investigation Bureau, executed an affidavit alleging a pattern of continuing criminal conduct on the part of Craig involving the illegal dispensation of controlled dangerous substances.[1] Based

---

1. The affidavit reads, in pertinent part:
   Your affiant believes that Dr. Bruce Lance Craig, M.D., is dispensing controlled dangerous substances from his home on a regular basis, without being licensed to dispense or conduct his professional practice from the above described premises which is in direct violation of Louisiana Regulatory Statute 40:973(D):
   'A separate license shall be required at each principle [sic] place of business or professional practice where the applicant manufactures, distributes, or dispenses controlled dangerous substances.'
   Your affiant also believes that Dr. Craig is maintaining a large supply of the above mentioned drugs in these premises. Some of the drugs stored on the premises were acquired by Dr. Craig from his patients. This, according to Title 40, Louisiana Revised Statutes, is not the prescribed method of acquiring controlled dangerous substances.
   Your affiant believes the above to be true because:
   (1) Terri Craig, a resident of Grant Parish and Dr. Craig's wife, has told your affiant that during the past three years, Dr. Craig, on a regular basis, dispensed Morphine and Demerol, at a cost of forty dollars ($40.00) per injection to many different people, who would come to their home, the above mentioned premises. One of the examples cited by Mrs. Craig was a Billy Hatten who received Demerol and/or Morphine. From the description given by Mrs. Craig, your affiant believes Billy Hatten to be one Billy R. Hatten from Columbia, Louisiana, white male, date of birth September 13, 1952, who has been convicted of felony drug charges in Louisiana. Mrs. Craig has also observed Dr. Craig take

upon the affidavit, a state district judge issued on the same day a warrant to search Craig's home for such substances.

The search of the defendant's home took place later that same day and resulted in the seizure of controlled dangerous substances. A federal search warrant to search Craig's office was issued shortly thereafter, and upon execution, officers seized an unknown quantity of patient records. In large part, the affidavit underlying the federal search warrant was based upon evidence seized pursuant to the state search warrant.

Craig was federally indicted on February 18, 1987, for twenty-one counts of unlawfully dispensing controlled dangerous substances in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Craig moved to suppress the evidence seized pursuant to the state and federal search warrants, alleging (1) that the Wagner affidavit supporting the state search warrant did not establish probable cause and (2) that the evidence seized pursuant to the federal search warrant was the fruit of the illegal state search.

The district court granted Craig's motion, ruling that the facts alleged in the affidavit were stale and did not establish probable cause at the time the warrant was issued. The government moved for reconsideration, arguing that the evidence was admissible under the exclusionary rule's good-faith exception established in *United States v. Leon.* The court denied the motion, concluding that the affidavit was so deficient that it was impossible for Wagner to have had an objectively reasonable good-faith belief in the validity of the warrant.

## II.

Principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if a decision on the admissibility of the evidence under the good-faith exception of *Leon* will resolve the matter. *See United States v. Maggitt,* 778 F.2d 1029, 1033 (5th Cir.1985), *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2920, 91 L.Ed.2d 548 (1986); *United States v. Gant,* 759 F.2d 484, 486 (5th Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985). The only instances in which this maxim should not be followed are those in which the resolution of a "novel question of law ... is necessary to guide future action by law enforcement officers

drugs from patients and bring them home. Mrs. Craig is a licensed practical nurse.
(2) Charles Mask, a resident of Grant Parish, has told your affiant that on October 1, 1986, he was legally present at the above described residence to do some construction work for Dr. Craig when he observed a large quantity of drugs in pill bottles bearing different names in Dr. Craig's bathroom. Charles Mask is also a brother-in-law to Dr. Craig.
(3) Georgia West, a resident of Rapides Parish, has told your affiant that she was married to Dr. Craig for ten years prior to Mrs. Terri Craig. Mrs. West also states that she, a practicing registered nurse, while married to Dr. Craig, did work at his offices and did observe him take drugs from patients and bring them home. Mrs. West also informed your affiant that in February of 1983, during a telephone conversation with Dr. Craig, they were separated at this time, she indicated she had a headache. A short time later, Dr. Craig arrived at her residence and left ten (10) fifteen milligram (15 mg) vials of Morphine. Mrs. West gave your affiant the Morphine with the original seal on the box, and expiration date for this lot being November, 1983.
The affidavit also contains three other paragraphs averring that (1) a criminal investigation of Craig's alleged illegal distribution of controlled substances was due to be presented to a federal grand jury in the near future; (2) Craig was scheduled to appear at the end of October 1986 before the Louisiana State Board of Medical Examiners for alleged unethical medical practices; and (3) representatives of the Drug Enforcement Administration, Louisiana Department of Health and Human Resources, and the United States Attorney's office in Shreveport, Louisiana, all stated that Craig was in violation of state and federal narcotics laws and compliance regulations. As the district court noted in its ruling on the government's motion for reconsideration,

> [t]he Court has previously determined, and the government concedes, that paragraphs 4, 5 and 6 of the affidavit, as well as the introductory statement of Trooper Wagner, present only conclusions which cannot be properly considered in establishing probable cause.

The government apparently still concedes the point, as it does not refer to paragraphs 4 and 5 in its brief, and refers to paragraph 6 only to argue that the officer's receipt of guidance from at least three outside agencies is indicative of his good faith under *Leon.*

and magistrates." *Illinois v. Gates,* 462 U.S. 213, 264, 103 S.Ct. 2317, 2346, 76 L.Ed. 2d 527 (1983) (White, J., concurring in the judgment). *See also Maggitt,* 778 F.2d at 1033. This is simply another application of the sound judicial practice of refusing to decide or address issues whose resolution is not necessary to dispose of a case, unless there are compelling reasons to do otherwise.

This case does not raise any "novel question[s] of law," the fourth amendment issue being merely whether the facts alleged in the affidavit were so dated that they failed to establish probable cause at the time the warrant was issued. Because the issue is primarily factual in nature, its resolution will not give substantial guidance to lower courts and law enforcement officials. We therefore turn to the *Leon* issue first; and since we decide that the evidence is admissible under *Leon,* we do not reach, and express no view upon, the issue of whether the warrant was supported by probable cause.

### III.

In *Leon,* the Court held that evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible in the prosecution's case-in-chief, even though the affidavit on which the warrant was based was insufficient to establish probable cause. *See* 468 U.S. at 922–23, 104 S.Ct. at 3420–21. Issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant. *Id.* at 922, 104 S.Ct. at 3420. Although the Court set forth four exceptions to this rule, only one—the so-called "bare bones" affidavit exception—is at issue in this case: An officer will not be able to claim objective good faith when the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its

existence entirely unreasonable.' " *Id.* at 923, 104 S.Ct. at 3421 (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265–66, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)).

Like the determination of probable cause, "the determination of good faith will ordinarily depend on an examination of the affidavit by the reviewing court." *Gant,* 759 F.2d at 487–88. Our first, step, therefore, is to examine the affidavit, looking to see what it did, and did not, establish regarding Craig's activities. Only then can we decide whether the affidavit was so deficient that no reasonable officer could have believed that it established probable cause.

Two principles should guide us in assessing whether the Wagner affidavit bore indicia of probable cause. First, "it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States,* 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932). *See also United States v. Minis,* 666 F.2d 134, 140 (5th Cir.), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982). Second, the affidavit should be construed "in a common sense and realistic manner," *United States v. Maestas,* 546 F.2d 1177, 1180 (5th Cir. 1977), with conclusions based upon the " 'laminated total' " of available facts. *United States v. Fooladi,* 703 F.2d 180, 184 (5th Cir.1983) (quoting *Smith v. United States,* 358 F.2d 833, 837 (D.C.Cir.1966), *cert. denied,* 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448 (1967)).[2]

Before arriving at any conclusions based upon the "laminated total" of the facts averred in the affidavit, we initially consider each individual averment, because it is at first glance somewhat unclear what they do and do not establish. In order of chronology, they are:

---

**2.** In the Supreme Court's view, probable cause is a "practical, nontechnical conception ... [based upon] the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brine-*

*gar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949). At the same time, probable cause means more than simply mere suspicion. *See id.* at 175, 69 S.Ct. at 1310.

A. Allegations of Georgia West (¶ 3)—(1) that at unspecified times during their ten-year marriage (extending through at least February 1983, at which time West indicates they were separated), she observed Craig "take drugs from patients and bring them home," and (2) that in February 1983 Craig delivered to her residence morphine obtained from an unknown location.

B. Allegations of Terri Craig (¶ 1)—(1) that "on a regular basis" during "the past three years,"[3] Craig dispensed morphine and demerol to many different people who would come to "their home," citing one specific example occurring at an unspecified time, and (2) that she observed, again at unspecified times, Craig take drugs from patients and bring them home.

C. Allegations of Charles Mask (¶ 2)—that on October 1, 1986, eight days before the swearing of the affidavit and the issuance of the warrant, he observed "a large quantity of drugs in pill bottles bearing different names" in Craig's bathroom.

In sum, it appears from the affidavit that Craig, for a period of approximately thirteen years ending February 1986, was in the habit of storing unidentified drugs in his home, and during approximately the last three years of that period regularly dispensed controlled dangerous substances from his home.[4] Eight months later, and one week before the affidavit was issued, there is evidence that he continued to store unidentified drugs at his home.[5]

Craig's argument is simply this: The facts alleged in the affidavit were so dated that no reasonable officer could have believed that the affidavit established probable cause to search his home. We disagree.

Two considerations have consistently appeared in this court's opinions on the issue of staleness. First, if "the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity, even if fairly long periods of time have lapsed between the information and the issuance of the warrant, the information need not be regarded as stale." *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir.), *cert. denied*, 469 U.S. 1073, 105 S.Ct. 565, 83

---

3. There are two possible interpretations of what is meant by use of the phrase "the past three years." The first is that, read in context, it refers to the three-year period ending at the time Wagner wrote out the affidavit. The second interpretation is that this three-year period is the period ending at the time Wagner talked with Ms. Craig. Although the affidavit does not indicate when this conversation occurred, reading the affidavit in a common-sense fashion suggests that it must have occurred no earlier than February 1986, simply because the three-year period in which Ms. Craig could have observed Craig dispensing drugs from "their house" could have begun no earlier than February 1983, at which time Craig was legally separated from but still married to Georgia West.

There is no indication that Wagner was attempting to deceive the state district judge by leaving the affidavit purposefully vague. For the purposes of our decision, however, we will assume that the subject three-year period ended in February 1986.

4. Craig disputes this chronology, asserting that we must follow the rule of *United States v. Button*, 653 F.2d 319 (8th Cir.1981):

'Generally when the courts are forced to make an assumption as to when transactions occurred "within" a given period, for purposes

of determining probable cause, it must be assumed that the transactions took place in the most remote part of the given period.' *Id.* at 324 (quoting *Commonwealth v. Novak*, 233 Pa.Super. 236, 335 A.2d 773 (1975)). On this basis, he argues that the court must assume that Craig last dispensed controlled dangerous substances at the *beginning* of the three-year period described in the Terri Craig averment, or February 1983. This argument ignores the fact that Ms. Craig stated that Craig dispensed morphine and demerol "regularly" throughout the period. Construing the affidavit in a common-sense fashion leads to the conclusion that Craig, as part of a continuing course of conduct, was still dispensing morphine and demerol sometime in early 1986. We add, as well, that while we here express no view on the *Button* rule, we are not bound by it.

5. Viewed in isolation, the fact that a doctor, or for that matter, anybody, stored unidentified drugs in pill bottles in his home would hardly be suspicious. Viewed in the context of the long-term, continuous criminal activity alleged in the affidavit, however, we believe that this fact could reasonably enter, albeit marginally, into a reasonable officer's determination of whether the affidavit bore indicia of probable cause.

L.Ed.2d 506 (1984). *See also United States v. Freeman*, 685 F.2d 942, 951 (5th Cir.1982). Second, the nature of the evidence sought is also relevant. Courts are more tolerant of dated allegations if the evidence sought is of the sort that can reasonably be expected to be kept for long periods of time in the place to be searched. *See id.*, 685 F.2d at 951–52.[6]

Although certainly not a thing of beauty, the affidavit is not so lacking in "indicia of probable cause" as to render objectively reasonable good faith in a warrant issued pursuant to it impossible. The affidavit made out a case of continuing criminal conduct on Craig's part for over thirteen years, extending, under a common-sense reading of the affidavit, until at least approximately February 1986. More current evidence justified suspicions that Craig was either still dispensing drugs from, or storing them in, his home one week before the warrant was issued. In comparison to other staleness cases, the time periods involved here are lengthy, but not excessive, in light of the allegations that Craig had been engaged in criminal activity for over thirteen years.[7]

Given that we "have consistently encouraged law enforcement officers to obtain warrants before conducting searches," it would be inappropriate for us to undermine such encouragement "by requiring officials to second-guess the magistrate's determination." *Gant*, 759 F.2d at 488. We thus hold that the affidavit had sufficient "indicia of probable cause" such that it was possible for Wagner to believe, objectively

and reasonably, in the validity of the warrant.

### IV.

The order of the district court suppressing the evidence seized pursuant to the state and federal search warrants is REVERSED, and the case is REMANDED for further proceedings.

**6.** It should be noted that the question is *not* whether there was probable cause to believe that Craig was still dispensing controlled substances from his home as of October 1986; rather, the question is whether there is probable cause to believe that evidence of Craig's past violations—namely, controlled dangerous substances or other evidence of dispensation (such as patient records) would be found in his home in October 1986. Of course, an affirmative answer to the former question would support an affirmative answer to the latter.

**7.** *See Cauchon v. United States*, 824 F.2d 908, 910–11 (11th Cir.) (October 1982 tip that defendant was manufacturing drugs, coupled with later observations of suspicious activities, suffi-

cient to support warrant issued in September 1983), *cert. denied*, —— U.S. ——, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987); *Freeman*, 685 F.2d at 951–52 (observations of smuggling activities in April and May 1980 sufficient to support search warrant issued in November 1980); *Minis*, 666 F.2d at 140 (observation of marijuana plants in July, coupled with later observation of ongoing activity, supported issuance of warrant in October); *United States v. Tucker*, 638 F.2d 1292, 1298–99 (5th Cir. Unit A Mar. 1981) (observation of gambling activities between March 1978 and December 1978 sufficient to support warrant issued in January 1979), *cert. denied*, 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 111 (1981).