IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 14, 2008

Charles R. Fulbruge III
Clerk

No. 06-10613
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

BILLY GEORGE SEWARD

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 7:04-CR-023

Before WIENER, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Billy George Seward ("Seward") challenges factual findings underlying the district court's denial of his motion to suppress evidence procured pursuant to a search warrant. Seward also appeals the district court's denial of his motion to suppress statements he made before he was Mirandized. For the reasons below, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

On June 25, 2004, Officer Bobby Dilbeck, a veteran narcotics investigator, and other law enforcement officials executed a search warrant at Stanley Britt's residence and found methamphetamine. Officer Dilbeck contends that he received a tip that morning concerning Britt from a confidential informant to whom he was introduced by another narcotics investigator, Officer Karl King. The informant helped Officer King seize large amounts of methamphetamine in at least three prior cases. According to Officer Dilbeck, Britt was arrested and booked into the Wichita County Jail at approximately 12:00 p.m..

Following Britt's arrest, Officer Dilbeck asserts, the informant tipped him on another methamphetamine dealer named "Mike" and claimed to have seen methamphetamine at Mike's house within the last 24 hours. The informant described Mike as a white male, close to 40 years old, and around 5'10" and 190 pounds. The informant showed Officer Dilbeck the house, which was on Highway 281 and had the numbers "8985" on the front gate.

At around 2 p.m., Officer Dilbeck presented his affidavit to a magistrate judge, seeking a search warrant to search the 8985 residence. In his affidavit, Officer Dilbeck noted that the informant, who was familiar with methamphetamine and was reliable in the past, had seen methamphetamine at the house in the last 24 hours. The magistrate judge issued the warrant at 2:12 p.m. but inadvertently omitted the time of issuance on the warrant.

On his way back to the house, Officer Dilbeck contacted another officer, Officer John Spragins, informing him that the magistrate judge had signed the search warrant so that he could prepare for a search. Before Officer Dilbert arrived, Officer Spragins entered the house, finding Seward, who matched the description of "Mike," and his wife inside. Officer Spragins claims that he had Seward handcuffed for officer safety. According to Officer

2

Spragins, he then told Seward that he had a search warrant and asked for his help to avoid having to "go through everything in the house." Officer Spragins contends Seward was "very cooperative" and that he did not threaten or point a gun at Seward. After proclaiming his wife's innocence, Seward took Officer Spragins to the bedroom and surrendered drugs he had hidden under the bed.

Officer Dilbert arrived at approximately 2:45 p.m., read Seward his Miranda rights, and arrested him. Seward subsequently waived his Miranda rights and again acknowledged that the methamphetamine belonged to him. Another officer asked Seward if he had other drugs in the house. While Seward said he did not, officers later discovered other drugs along with various firearms.

After Seward's arrest, he moved to suppress evidence and statements procured at the residence. Seward contended that suppression was necessary because: (1) the search warrant contained an incorrect address and did not include his name as well as a time of issuance; (2) the affidavit falsely asserted that the informant was in Seward's house in the 24 hours before the search; and (3) Seward gave incriminating statements while in custody but before he was Mirandized.

At the suppression hearing, Officers Dilbeck and Spragins testified to the above facts. Officer Dilbeck also explained that he discovered only after the search that the address of Sewards' residence had changed from "8985 U.S. Highway 281" to "1101 U.S. Highway 281." Moreover, Officer Dilbeck testified that drug dealers commonly use aliases instead of their real names.

Seward called three witnesses–Britt, his wife, and himself–all of whom had a dramatically different account of events. Britt testified that Officer Dilbeck did not leave his house until 2:00 pm. Seward's wife claimed that the search began at 2:15 p.m., and that the police filled out the search warrant

only after the search. Finally, Seward asserted that the search began at 2:00 p.m., the police pointed a gun at him throughout, and that the police never Mirandized him.[1]

Following the hearing, the district court issued its findings of facts and conclusions of law. Finding the officers' testimonies more credible, the court concluded that Seward had failed to demonstrate a violation of his Fourth or Fifth Amendment rights, and that suppression was unnecessary.

After the district court denied his motion to suppress, Seward entered into a plea agreement in which he "reserve[d] the right to appeal the Court's denial of his motion to suppress evidence as it relates only to the Fourth Amendment and to his post-<u>Miranda</u> statement [sic] to the police." Seward then filed this appeal.

## II.

Where the district court has denied a motion to suppress, we review its findings of facts for clear error and its conclusions of law <u>de novo</u>. <u>United States v. Shabazz</u>, 993 F.2d 431, 434 (5th Cir. 1993). "A finding is clearly erroneous if the court is left with the definite and firm conviction that a mistake has been committed." <u>United States v. Hernandez</u>, 279 F.3d 302, 306 (5th Cir. 2002) (internal quotation marks and citation omitted). "Where a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses." <u>United States v. Santiago</u>, 410 F.3d 193, 197 (5th Cir. 2005).

## III.

---

[1] While testifying at the suppression hearing, Seward claimed that Officer Dilbeck never <u>Mirandized</u> him. But in his brief, Seward seemingly acknowledged that Officer Dilbeck read him his <u>Miranda</u> rights after his arrest. (Appellant's Br. 32-33.)

We review a denial of a motion to suppress in two steps. First, we must determine if the good-faith exception to the exclusionary rule established in United States v. Leon, 468 U.S. 897 (1984), applies. United States v. Payne, 341 F.3d 393, 399 (5th Cir. 2003). "Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance was objectively reasonable and in good faith." Id. If the good-faith exception applies, then we do not consider the question of probable cause unless the question is novel and an answer is necessary to help guide magistrate judges and law enforcement officers. Id.

Police who conduct a search pursuant to a warrant issued by a magistrate presumptively act in good faith. United States v. Craig, 861 F.2d 818, 821 (5th Cir. 1988) ("Issuance of warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant."). But the good faith exception is nonetheless inapplicable under any of the following four sets of circumstances: "(1) If the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth; (2) where the issuing magistrate/judge wholly abandoned his or her judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid." United States v. Webster, 960 F.2d 1301, 1307 n.4 (5th Cir. 1992) (per curium).

In this case, the police presumptively conducted its search of Seward's residence in good faith because they had a warrant issued by a magistrate.

Seward, however, claims that the good-faith exception is inapplicable because Officer Dilberck lied in his affidavit about receiving tips from an informant, thereby making this case an example of the first set of circumstances outlined above. Seward points to purported errors on the warrant—the incorrect address, the affidavit's reference to "Mike," and the magistrate's failure to note the time of issuance—and inexplicably argues that "a reasonable deduction" is that Officer Dilbeck invented the informant. Seward also urges us to consider the testimonies of his witnesses at the suppression hearing, which dramatically contradict both Officer Dilbeck and Officer Spragins's version of events. In sum, Seward does not dispute that the good faith exception applies if events occurred as the officers testified, but Seward simply contends that events occurred differently.

We find that Seward's arguments lack merit. We reject simply as illogical the contention that the warrant's purported errors somehow indicate that Officer Dilbeck fabricated the informant. Moreover, we conclude that the district court did not clearly err when it made findings of fact in accordance with the officers' version of events. Having heard both the testimonies of Seward's witnesses and the officers, the district court ultimately found the officers more credible and resolved the many factual discrepancies in the government's favor. While Seward vehemently contends that the district court was wrong, he offers no evidence as to why the district court's findings were clearly erroneous. Therefore, we accept the district court's findings of fact. Because Officer Dilbeck, the affiant, did not knowingly mislead the magistrate judge, we find that the good faith exception applies here. In a case involving only factual issues, this finding is dispositive, and we express no view on whether the warrant was supported by probable cause. See Craig, 861 F.2d at 820-21 (finding that courts need not reach the issue of probable

cause if the good faith exception applies and the case involves only issues that are "primarily factual in nature").

IV.

Finally, Seward appeals the district court's denial of his motion to suppress statements he made to the police before he was arrested. We do not address this issue, however, because Seward waived his right to appeal this portion of the district court's order. Under his plea agreement, "Seward reserve[d] the right to appeal the Court's denial of his motion to suppress evidence as it relates only to the Fourth Amendment and to his post-<u>Miranda</u> statement [sic] to the police." In its order, the district court found that the police Mirandized Seward after they arrested him.[2] Therefore, the "post-<u>Miranda</u>" statements referred to in the plea agreement are statements he made after his arrest, and we find that Seward waived his right to challenge on appeal the admissibility of statements he made before his arrest.

V.

For the reasons above, we AFFIRM.

---

[2] Seward also seemingly acknowledged in his brief that Officer Dilbeck read him his <u>Miranda</u> rights after his arrest. (Appellant's Br. 32-33.)