**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 27, 2012

Lyle W. Cayce
Clerk

No. 11-60331

UNITED STATES OF AMERICA,

> Plaintiff-Appellee Cross-Appellant

v.

DARRYL BONDS,

> Defendant-Appellant Cross-Appellee

Appeals from the United States District Court
for the Southern District of Mississippi
USDC No. 3:09-CR-82-2

Before HIGGINBOTHAM, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant Darryl Bonds appeals his conviction and sentence for possession with intent to distribute more than 100 kilograms of marijuana. Bonds argues that the district court erred by: (1) refusing to suppress the evidence found while executing the search warrant for his home; (2) denying his requested jury instruction about missing witnesses; (3) refusing to allow him to introduce evidence of his wife's conviction on a related charge; and (4) extrapolating cash found at his residence to an equivalent amount of marijuana

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60331

for sentencing purposes. On cross-appeal, the Government argues that the district court erred by failing to consider Bonds's relevant conduct when calculating the appropriate Guidelines range for his sentence.

We conclude that the district court committed reversible error only with regard to the Government's contention on cross-appeal. Accordingly, we AFFIRM Bonds's conviction, VACATE his sentence, and REMAND for resentencing.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 30, 2009, Drug Enforcement Administration ("DEA") agents and local law enforcement gathered in two teams near Bonds's Mississippi residence to execute separate arrest and search warrants. Following a traffic stop, Bonds evaded police in a high-speed chase and threw what appeared to be a Ziploc bag full of marijuana out of the window of his car. The agents abandoned the chase and went to Bonds's house to execute the search warrant. There, they discovered a recreational vehicle ("RV") and a storage room that contained hundreds of kilograms of marijuana, weapons, and $109,320 in cash. Bonds evaded arrest by hiding at his girlfriend's house until police ultimately arrested him several months later.

A grand jury charged Bonds and his wife Diana with intentionally possessing more than 100 kilograms of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Diana pled guilty to using a communication facility in a drug crime under 21 U.S.C. § 843(b).

Bonds moved to suppress the evidence seized from his home, claiming that the search warrant was not based on probable cause. The search warrant was issued on the basis of an affidavit from a DEA agent who averred that, based upon his knowledge and experience, drug dealers often maintain crime-related information in their homes. The affidavit also described a wire intercept, independent investigations, interviews of confidential informants and witnesses,

2

No. 11-60331

and physical surveillance, all of which implicated Bonds in a drug-trafficking operation between Arizona and Mississippi. Bonds argued that the only evidence in the search warrant that connected illegal drug dealing to his residence and the RV was the statement of a confidential informant who was of unproven reliability and who provided stale information by alleging that he knew of marijuana at Bonds's residence sometime prior to June 2008, over a year before the raid.

The district court denied Bonds's motion to suppress. Bonds's case was tried to a jury, and he was found guilty on the one-count indictment. The district court entered judgment on the verdict and sentenced Bonds to 168 months imprisonment. Bonds timely appealed, and the Government timely cross-appealed.

## II. DISCUSSION

### A. Conviction

#### 1. Motion to Suppress

Bonds first argues that the district court erred in denying his motion to suppress by asserting that the good-faith exception to the probable cause requirement is unsatisfied. In evaluating the sufficiency of a search warrant, "we must first determine whether the good-faith exception to the exclusionary rule applies." *United States v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997). This exception provides that "evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible in the prosecution's case-in-chief, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988). "[W]e review the district court's evaluation of officers' objective reasonableness *de novo*." *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003).

No. 11-60331

Typically, "[i]ssuance of a warrant by a magistrate . . . suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant." *Craig*, 861 F.2d at 821. The good-faith exception applies unless, *inter alia*, "the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Gibbs*, 421 F.3d 352, 355 (5th Cir. 2005) (internal quotation marks and citation omitted). Bonds challenges the applicability of the good-faith exception, arguing that the affidavit upon which the search warrant was issued was "bare bones" because the facts therein were stale and lacked a sufficient nexus connecting the illegal activity, Bonds, and his property.

Two considerations must be taken into account in reviewing an affidavit for staleness. *Craig*, 861 F.2d at 822-23. First, where the information in the affidavit shows a "long-standing, ongoing pattern of criminal activity," the information need not be regarded as stale. *Id.* at 822 (internal quotation marks and citation omitted). Second, where evidence is "of the sort that can reasonably be expected to be kept for long periods of time in the place to be searched," it is less likely to be considered stale. *Id.* at 823.

The first consideration militates against finding staleness here. The affidavit upon which the search warrant was based contained information from a multitude of sources that implicated Bonds in a "long-standing, ongoing pattern of criminal activity." *See id.* at 822. Though Bonds argues that the information is stale because the informant only claimed to have seen drugs at Bonds's residence prior to June 2008, the affidavit also includes information that implicates Bonds in a continuing pattern of drug activity through June 2009, just before the warrant was executed. Information is not stale where, as here, the basis for searching a defendant's home is rooted in "overall drug trafficking and sales activity, [and] not just those sales that actually took place at his residence," and there are allegations of drug activities occurring just a few weeks

4

before the warrant's issuance. *See United States v. Webster*, 960 F.2d 1301, 1306-07 (5th Cir. 1992).

As to the second consideration regarding the durability of the evidence, Bonds contends that because marijuana is consumable, the informant's statements linking his residence with marijuana a year before the search warrant was executed are stale. However, the affidavit stated the affiant's belief that a search would reveal records and documents that demonstrated Bonds's participation in a drug-trafficking operation. It further stated that, based on the affiant's experiences, drug traffickers commonly store such items in their residences. Because records can "reasonably be expected to be kept for long periods of time in the place to be searched," the second consideration also precludes determining that the evidence was stale. *See Craig*, 861 F.2d at 823. Thus, Bonds's staleness challenge to the good-faith exception fails.

Bonds also alleges that there was not a sufficient nexus connecting the drug activity to his residence because the only confidential informant that indicated that drug-related activity might be occurring at his home was of unproven reliability and provided uncorroborated information. While it is true that "[t]he affidavit must connect . . . the residence to be searched with the illegal activity, . . . [the] nexus may be established through normal inferences as to where the articles sought would be located." *United States v. Pace*, 955 F.2d 270, 277 (5th Cir. 1992) (internal quotation marks and citations omitted).

Here, the affiant averred that based on his experience, drug traffickers frequently keep evidence of their crimes in their homes. While this statement alone might be insufficient to elevate the affidavit above a "bare bones" level, it is sufficiently corroborated by independent facts that reveal that Bonds was involved in drug trafficking. *See Payne*, 341 F.3d at 400-01 (finding sufficient nexus in child pornography case where generalizations about the tendencies of people who sexually exploit children to keep evidence thereof at home were

No. 11-60331

combined with other facts in the affidavit). Here, the information was corroborated sufficiently to support the warrant. *See, e.g.*, *Shugart*, 117 F.3d at 844 (affidavit that related information from confidential informant provided sufficient indicia of probable cause where Government conducted independent investigation to corroborate information); *United States v. Fields*, 72 F.3d 1200, 1214 (5th Cir. 1996) (affidavit not "bare bones" where "the credibility of the confidential informants was established by other information in the affidavit").

Bonds failed to prove that the search warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See Gibbs*, 421 F.3d at 355 (internal quotation marks omitted). Accordingly, the district court did not commit reversible error in denying his motion to suppress.

### 2.    Jury Instruction

Bonds contends that the district court erred in failing to give instruction D-19 to the jury,[1] which provides that the jury may "consider the prosecution's failure to call other witnesses or to produce other evidence shown by the evidence in the case to be in existence and available." Here, Bonds does not object to the prosecution's failure to call a particular witness. Instead, he contends that none of the given instructions "specifically informed the jury that in addition to considering the evidence in determining Bonds' guilty [sic], the jury could also consider the lack of evidence."[2]

---

[1] Instruction D-19 is typically referred to as a "missing witness" instruction, where defendants argue that the prosecution did not call a witness or witnesses who had knowledge about the facts of the case. *See, e.g.*, *United States v. Olivarez*, No. 92-7791, 1994 WL 93297, at *1 (5th Cir. Mar. 14, 1994) (unpublished); *see also United States v. Parr*, 516 F.2d 458, 471 (5th Cir. 1975) ("Failure to produce a favorable witness peculiarly within a party's power creates an inference that his testimony would be unfavorable.").

[2] Bonds's objection to the jury charge appears to be nothing more than a backdoor means of raising an objection to the sufficiency of the evidence. While Bonds objected to the court's refusal to give instruction D-19, he did not make a sufficiency of the evidence objection.

No. 11-60331

The standard of review for refusal to give a jury instruction is abuse of discretion. *United States v. Jones*, 132 F.3d 232, 242 (5th Cir. 1998). We will only reverse the district court for refusal to give a requested instruction "if the proposed instruction was (1) substantively correct, (2) not substantively covered in the jury charge, and (3) concerned an important issue in the trial, such that failure to give the requested instruction seriously impaired the presentation of a defense." *Id.* Further, "the charge must be examined in the full context of trial including the final arguments of counsel." *United States v. Stanley,* 765 F.2d 1224, 1236 (5th Cir. 1985).

Applying this standard, Bonds's argument lacks merit. In the absence of an argument that a particular witness should have been called or particular evidence offered, it is doubtful whether D-19 would even have been a correct instruction for this case. Even if instruction D-19 was "substantively correct," it was still substantively covered in the actual jury charge. The district court instructed the jurors that they could make common sense deductions and conclusions, thereby implying that they could consider the absence of evidence in conjunction with the presence thereof. Further, the court's failure to give instruction D-19 did not seriously impair the presentation of Bonds's defense, as Bonds thoroughly presented his theory of the defense in his closing argument. *See id.* Accordingly, the failure to include the requested instruction was not reversible error as it does not meet the second and third prongs of the test for reversal. *See Jones*, 132 F.3d at 242.

---

This court's review of an unpreserved insufficiency claim is "exacting" and "such a claim will be rejected unless the record is *devoid of evidence* pointing to guilt or if the evidence is so tenuous that a conviction is shocking." *United States v. Delgado*, 672 F.3d 320, 330-31 (5th Cir. 2012) (en banc) (internal quotation marks and citation omitted). To the extent that Bonds attempts to raise this challenge for the first time on appeal, we reject it. The record is replete with evidence of Bonds's guilt and the evidence is far from "so tenuous" as to deem his conviction "shocking."

3.     <u>Refusal to Admit Evidence of Diana's Conviction</u>

In his third issue on appeal, Bonds challenges the district court's grant of the Government's motion in limine on relevance grounds. The motion prevented Bonds from introducing evidence of Diana's related conviction for using a communication facility in a drug crime absent her testimony. By seeking to have Diana's conviction admitted, Bonds sought to demonstrate "that the evidence was equally consistent with the notion that Diana and someone else possessed the marijuana." Although only Bonds listed Diana as a possible witness, he did not call her to testify.

We review "the district court's evidentiary rulings for abuse of discretion." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009). Importantly, "a trial court has broad discretion in determining the admissibility of evidence based on relevance . . . , and that determination will be overturned only when the abuse of that discretion is clearly shown from the record." *United States v. Collins*, 690 F.2d 431, 438 (5th Cir. 1982). Exclusion of relevant evidence is "harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Lowery*, 135 F.3d 957, 959 (5th Cir. 1998) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

The trial court did not exceed its broad discretion in refusing to admit evidence of Diana's separate conviction. *See Collins*, 690 F.2d at 438. Moreover, even if the evidence of Diana's conviction was relevant and the district court did exclude it in error, the overwhelming weight of the evidence against Bonds renders any error harmless because the failure to admit the conviction was unlikely to have "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Lowery*, 135 F.3d at 959 (quoting *Kotteakos*, 328 U.S. at 776).

For the foregoing reasons, we affirm Bonds's conviction.

## B.     Sentence

The Government contends on cross-appeal that the district court improperly calculated the applicable Guidelines range by failing to account for Bonds's relevant conduct outside of Mississippi.     The district court's "interpretation or application of the Sentencing Guidelines is reviewed de novo." *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (internal quotation marks and citation omitted).  We must first determine whether the district court committed a procedural error "'such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).  The "district court must always *correctly* calculat[e] the applicable Guidelines range before imposing a sentence." *United States v. Ibarra-Luna*, 628 F.3d 712, 713 (5th Cir. 2010) (alteration in original) (internal quotation marks and citation omitted).

The Guidelines require including a defendant's relevant conduct in calculating a base offense level, by including drug amounts that were part of the same course of conduct or common scheme or plan as the offense of conviction. *See* U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.3(a)(1)(B), (a)(2) (2008).  Here, as the Presentence Report stated, had the district court included the quantity of drugs from Bonds's entire course of conduct, it would have used 1,477.976 kilograms of marijuana in its calculation rather than only using the 285.976 kilograms that were found in his home.  This amount of drugs alone would increase Bonds's base offense level from 26 to 32.  *See* U.S.S.G. § 2D1.1(c)(4), (7).  The district court's statements at sentencing suggest that it refused to consider conduct occurring elsewhere in sentencing here, stating that it was unfair "to this defendant or any other defendant . . . to add, in effect, for

sentencing purposes conduct from other indictable offenses that in essence are separate crimes and could be charged in different places."[3]  We conclude that this approach constituted error.

Where a district court improperly calculates the Guidelines sentence, we have held that in light of *Booker* and its progeny, "the harmless error doctrine applies only if the proponent of the sentence convincingly demonstrates both (1) that the district court would have imposed the same sentence [absent] the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *Ibarra-Luna*, 628 F.3d at 714 (citing *United States v. Booker*, 543 U.S. 220 (2005)).  This is a heavy burden for the proponent of the sentence.  *Id.* at 717.  To carry the burden, "the proponent 'must point to evidence in the record that will convince [the appellate court] that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error.'" *Id.* at 718 (quoting *United States v. Huskey*, 137 F.3d 283, 289 (5th Cir. 1998)).

Because it appears that the district court miscalculated the appropriate Guidelines range, the burden is on Bonds as the proponent of the lower sentence to prove that the court would have imposed the exact same sentence for the same reasons that it gave at sentencing despite the error.  *See id.* at 714.  Bonds's only attempt to meet this burden is to argue that "it is clear from the evidence that the court would have imposed the same sentence regardless of whether it included the relevant conduct."  Bonds fails to satisfy his burden with this broad

---

[3]  If evidence to this effect were presented, the court could, but did not, make a finding that there were two completely unrelated drug-trafficking schemes: one in Mississippi and one in Arizona.   The existence of two entirely independent schemes may warrant the determination that the Mississippi and Arizona crimes should not be considered together for sentencing purposes.  On remand, the district court is free to make this determination if supported by the evidence.

No. 11-60331

statement. Therefore, the misapplication of the applicable Guidelines range was not harmless and requires us to remand for resentencing.[4]

### III.  CONCLUSION

We AFFIRM Bonds's conviction, VACATE his sentence, and REMAND for resentencing.

---

[4] Because we vacate and remand for resentencing on other grounds, we do not address Bonds's argument that the district court erred in converting the cash found at his house to an equivalent amount of marijuana.  The district court may reconsider this issue at resentencing.