# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-50954

United States Court of Appeals
Fifth Circuit

**FILED**

January 8, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RAYMOND RODRIGUEZ,

Defendant – Appellant.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:10-CR-794

Before JONES, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

Raymond Rodriguez appeals the district court's denial of his motion to suppress evidence seized from his residence. We AFFIRM.

## I. Factual and Procedural History

Steve Wilkins, a Texas Department of Public Safety ("DPS") officer, sought a warrant to search a residence located at 318 Amberdale Oak, San Antonio, Texas (the "Residence"). In his affidavit in support of the warrant, Agent Wilkins stated that probable cause existed to suggest that Rodriguez

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## No. 12-50954

was living at the Residence in possession of cocaine.  Agent Wilkins explained that during an unrelated investigation, a cooperating defendant ("CD") gave information to another DPS agent, alleging that Rodriguez was a supplier of cocaine in the San Antonio area.[1]  Based on this information, Agent Wilkins began to investigate Rodriguez and determined on August 27, 2010, that he currently resided at the Residence.  Agent Wilkins confirmed this belief through surveillance of the Residence.  He also conducted a utilities check on the location and performed a registration check on the vehicle parked at the Residence, which revealed that the utilities and the vehicle were registered to Rodriguez.

On August 31, 2010, Agent Wilkins searched a trash can that had been placed against the curb in front of the residence.  Agent Wilkins concluded that the trash can had been placed there for garbage pickup because the day of his search was a garbage collection day in the neighborhood and there were other trash cans along the street presumably placed there in anticipation of trash pickup.  Agent Wilkins searched two trash bags that he retrieved from the trash can and discovered "several clear plastic sandwich style baggies containing a white powdery residue."[2]  Agent Wilkins found a cell phone bill addressed to Rodriguez in the same trash bag as the plastic baggies.  One of the baggies was field tested, and the residue tested positive for cocaine.

---

[1] The CD also related that he had seen cocaine at Rodriguez's previous residence and that he had previously purchased two ounces of cocaine from Rodriguez.  However, Agent Wilkins's affidavit gave no indication as to when the CD had seen cocaine at Rodriguez's previous residence, when the CD purchased the cocaine, when this information was relayed by the CD to the other DPS agent, or when the other DPS agent relayed this information to Agent Wilkins.  The Government concedes that the information provided by the CD standing alone is insufficient to constitute probable cause.

[2] The size of the baggies was also consistent with the amount of cocaine the CD stated that he had previously purchased from Rodriguez.

No. 12-50954

The same day he conducted his trash search, Agent Wilkins signed the affidavit, stating that he believed that the Residence contained a quantity of cocaine intended for distribution. A magistrate judge issued the search warrant, and a search of the Residence took place on that same day. During the search, the police located over $9000 in cash, a 9 mm Taurus handgun, a ledger, two cell phones, and 1755.39 grams of cocaine.

Rodriguez was charged with possession with intent to distribute over 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). He moved to suppress the evidence seized from the Residence. After the district court denied his motion, Rodriguez entered a conditional plea of guilty, reserving his right to appeal the denial of his suppression motion. He filed a motion for reconsideration concerning his motion to suppress, which the district court denied. Rodriguez timely appealed.

## II. Discussion

The factual findings underlying the district court's denial are reviewed for clear error; the court's legal conclusions are reviewed *de novo*. *United States v. Gibbs*, 421 F.3d 352, 356–57 (5th Cir. 2005). When the evidence sought to be suppressed was discovered pursuant to a search warrant, "we [first] determine whether the good-faith exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897 (1984), applies."[3] *Cherna*, 184 F.3d at 407.

---

[3] If the good-faith exception applies, "we end our analysis and affirm the district court's decision to deny the motion to suppress" without considering whether the warrant was supported by probable cause. *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999); *see also United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003) ("If [the good-faith exception applies], we need not reach the question of probable cause for the warrant unless it presents a novel question of law, resolution of which is necessary to guide future action by law enforcement officers and magistrates." (citations and internal quotation marks omitted)).

No. 12-50954

The good-faith exception provides that a motion to suppress should not be granted if the officer executing the warrant relied upon it in good faith. *Gibbs*, 421 F.3d at 357. "Good faith" is determined by examining the objective reasonableness of the officer's "reliance on the issuing-judge's probable-cause determination and the technical sufficiency of the warrant" in light of the totality of the circumstances. *Id.* at 358. While the issuance of the warrant ordinarily suffices to establish good cause, reliance on a warrant issued upon a "bare bones affidavit" is not good faith. *Id.*; *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988); *see also Payne*, 341 F.3d at 399–400. A "bare bones" affidavit is defined as one that contains "wholly conclusory statements, [lacking] the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992); *see also United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006) ("[E]xamples of 'bare bones' affidavits include those that merely state that the affiant 'has cause to suspect and does believe' or '[has] received reliable information from a credible person and [does] believe' that contraband is located on the premises." (alterations in original) (citation omitted)). Whether an affidavit is "bare bones" is determined under "the totality of the circumstances, including the veracity, reliability, and basis of knowledge of a confidential informant." *United States v. Fisher*, 22 F.3d 574, 578 (5th Cir. 1994). The issuing judge must be allowed to draw reasonable inferences from the affidavit, and the ultimate determination of the affidavit's adequacy is entitled to great deference on review. *United States v. May*, 819 F.2d 531, 535 (5th Cir. 1987).

Rodriguez argues that Agent Wilkins's affidavit is "bare bones" because it does not establish a sufficient nexus connecting the drugs (and related evidence) to the Residence. However, in addition to describing information he received from the CD, Agent Wilkins detailed the investigation he performed

tying Rodriguez to the Residence, which included performing surveillance of the location and conducting utilities and vehicle registration checks. Agent Wilkins also described his search of the trash, which revealed drug paraphernalia and a bill addressed to Rodriguez leading him to conclude that there were probably drugs intended for distribution, as well as drug-related evidence, at the Residence. Based on this information, a reasonably objective officer could conclude that Agent Wilkins's investigation established a sufficient "nexus between the house to be searched and the evidence sought."[4] *See Payne*, 341 F.3d at 400.

Rodriguez also argues that the evidence from the trash search is stale because Agent Wilkins did not witness Rodriguez place the trash can outside for collection, and thus it is possible that the trash waited on the curb for several days. However, the fact that the trash can and the baggies contained therein may have been on the curb for several days does not preclude a reasonably objective officer from concluding in good-faith that it was probable that the items sought (i.e., drugs and "records, receipts, notes, ledgers, and other papers relating to the . . . distribution of controlled substances") were still in the Residence. *See Craig*, 861 F.2d at 823 (observing that records "can

---

[4] We have previously applied the good-faith exception under similar circumstances, observing that a trash search that revealed plastic baggies containing cocaine residue, combined with evidence of the defendant's prior arrests on narcotics violations, was "sufficient to support a reasonable belief that contraband would be found inside the residence." *See United States v. Sauls*, 192 F. App'x 298, 300 (5th Cir. 2006) (unpublished). Moreover, the Eighth Circuit concluded that a search of the garbage left outside a defendant's residence that revealed marijuana seeds and stems was "independently adequate" as stand-alone evidence to establish probable cause that the defendant's residence contained drugs and related evidence. *United States v. Briscoe*, 317 F.3d 906, 907–08 (8th Cir. 2003) (declining to apply the good-faith exception because stand-alone evidence of drugs in the garbage was sufficient to establish probable cause). Because we conclude that the good-faith exception applies, we need not decide here whether the drug-related evidence discovered in the trash can outside Rodriguez's residence standing alone suffices to establish probable cause.

reasonably be expected to be kept for long periods of time in the place to be searched"); *United States v. Freeman*, 685 F.2d 942, 952 (5th Cir. 1982) (evidence is not stale if the issuing judge could reasonably conclude that the evidence sought under the warrant would still be present at the residence).

In sum, Agent Wilkins's reliance on the warrant was not objectively unreasonable. *See Craig*, 861 F.2d at 823. Because we conclude that the good-faith exception applies, we do not address Rodriguez's argument that the warrant was not supported by probable cause. *See Cherna*, 184 F.3d at 407.

AFFIRMED.