**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas ANDERSON (aka Workman),**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Samuel LOVING, Defendant-Appellant.**

**Nos. 71-1646, 71-1647.**

United States Court of Appeals,
Ninth Circuit.

Dec. 20, 1971.

Noel K. Dessaint (argued), of Harrison, Myers & Singer, Phoenix, Ariz., for Thomas Anderson.

Tom O'Toole (argued), Asst. Federal Public Defender, Tom Karas, Federal Public Defender, Phoenix, Ariz., for Samuel Loving.

Joseph Jenckes, Asst. U. S. Atty. (argued), Richard K. Burke, U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before DUNIWAY and CHOY, Circuit Judges, and WHELAN,[*] District Judge.

CHOY, Circuit Judge:

■ This case poses an important problem in the evaluation of affidavits to determine probable cause for issuance of search warrants under the Fourth Amendment.[1] We hold that all data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath. In so holding, we reverse the convictions of Thomas Anderson and Samuel L. Loving for theft of United States mail in violation of 18 U.S.C. § 1708.

On November 23, 1970 two post office stations in Phoenix, Arizona reported mail missing from mail trucks which had been standing unattended in the post office yards. In each case, witnesses reported seeing a negro male in a green Chevrolet with the license number MFK–012 in the yard before the theft was discovered. Anderson and a woman companion were arrested while driving this car later in the day.

The postal inspectors sought a warrant to search Room 165 at the Caravan Inn in Phoenix. While conceding that the affidavit given to the Commissioner fails to establish probable cause for the issuance of the search warrant,[2] the

---

[*] The Honorable Francis C. Whelan, United States District Judge, Central District of California, sitting by designation.

1. The Fourth Amendment reads in part, " . . . [N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

2. The affidavit submitted to Commissioner Van Doren by Inspector Deyo reads as follows :

"The undersigned being duly sworn deposes and says:

"That he has reason to believe that on the premises known as the Caravan Inn, 3333 East Van Buren Street, Phoenix, Arizona, Room No. 165, in the District of Arizona, there is now being concealed certain property, namely a quantity of stolen mail, consisting of numerous pieces of mail, possibly addressed to 1931 West Indian School Road, Phoenix, Arizona through 1940 West Amelia Phoenix, Arizona, and any other mail and three trays which are used for holding mail, which are obtained illegally by theft from Carriers, Vehicles, at the Northwest Station, 2727 W. Camelback Road, Phoenix, Arizona, on November 23, 1970.

"And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows :

AFFIDAVIT OF PROBABLE CAUSE
"At 09:30 AM, November 23, 1970, Station Superintendent, Fred Jacques at the Downtown Station, 522 North Central Avenue, Phoenix, Arizona, observed a negro male in the parking lot reserved for Postal vehicle, standing around without reason. He was standing near a late model Malibu Chevrolet, light green in color, bearing Arizona license MEK 012 or MFK 012."

"The Station Superintendent at the Northwest Station, 2727 West Camelback Road, Phoenix, Arizona, reported a tray of mail had been stolen from a carrier's vehicle at that station, shortly after 9 :30 A.M. on November 23, 1970.

"At approximately 10 :00 AM a negro male, was observed driving a light green Chevrolet, late model, Malibu, bearing Arizona license MFK 012 in the restricted parking area at the Indian School Station, 741 East Highland, Phoenix, Arizona. The man was told he could not park in that area. A few minutes later it was learned that two trays of mail had been stolen from a Carrier's vehicle at the Indian School Station, 741 East Highland, Phoenix, Arizona.

"The 1971 Chevrolet Malibu, bearing Arizona license MFK 012 was rented by National Car Rental, 1024 South 24th Street. Phone : 275–4771, by a person using Master Charge Credit Card #08–1211–904–577 which expires on October 1971.

"John Bacon, Special Agent Interbank, San Francisco, California 'M.C. 415–391–1430' advised that the credit card had not been received by the addressee.

"A negro male approximately six feet tall, wearing a black leather jacket was

Government contends that other oral information given to the Commissioner by the affiant postal inspector prior to the latter's swearing to the insufficient affidavit provided the deficient elements necessary for probable cause. The inspector had told the Commissioner that the same person who had rented the green Chevrolet had rented Room 165, and that a motel maid had seen a Negro male, about six feet tall, wearing a shiny black jacket or vest in the room, which description fitted the driver of the Chevrolet.

Using the warrant, the postal inspectors searched Room 165, where they found and arrested Loving, and discovered mail trays and loose mail hidden under a bed and more loose mail secreted under the covers of another bed and in a pink suitcase. The inspectors also seized several plane tickets and clothes, too small to be Loving's. Largely on the basis of this evidence, the jury returned a verdict of guilty against both Anderson and Loving.

■ The warrant to search Room 165 was issued pursuant to Fed.R.Crim.P. 41(c), which states,

> "A warrant shall issue *only on affidavit* sworn to before the judge or commissioner and establishing the grounds for issuing the warrant. If the judge or commissioner is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant . . ." (emphasis added)

The Fourth Amendment and Rule 41(c) demand that all facts establishing probable cause be presented to the federal warrant-issuing official so that he may adequately perform his impartial function of determining probable cause upon a consideration of all facts. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). *Cf.* Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

■ The scope of judicial review of the validity of a warrant is equally narrow. "It is elementary that in passing on the validity of a warrant, the reviewing court map consider *only* information brought to the magistrate's attention." *Aguilar, supra,* at 109, n. 1, 84 S.Ct. at 1511. (emphasis in original). Thus, information known to the affiant which is not presented to the issuing officer is irrelevant to a determination of probable cause. *See* Durham v. United States, 403 F.2d 190, 194, n. 5 (9th Cir. 1968). As long ago as 1932, we held that a search warrant which was defective for lack of the time of observation could not be cured by oral testimony dehors the affidavit. Poldo v. United States, 55 F. 2d 866 (9th Cir. 1932). Quoting United States v. Casino, 286 F. 976 (S.D.N.Y. 1923), we said,

> "The authorities are clear that the affidavit must be self-sufficient, and cannot be bolstered up by oral testimony . . . '[I]t is not material that the other evidence is absent, which was before the commissioner and which may have induced him to deny quashal of the warrant. While under section 16 he must decide after hearing whether on all the facts there were reasonable grounds for the warrant, that does not dispense with the necessity for allegations in the affidavits themselves, which, if true, show a self-subsisting ground for the issu-

---

seen to leave the Caravan Inn, 3333 East Van Buren Street, Phoenix, Arizona, in the 1971 Chevrolet Malibu, bearing Arizona license MFK 012, at approximately 1:05 PM on November 23, 1970 and drive West on Van Buren Street, Phoenix, Arizona and other places in Phoenix, Arizona."

"/s/ Robert C. Deyo
Robert C. Deyo, Inspector
U.S. Postal Service

"Sworn to before me, and subscribed in my presence,
November 23, 1970.
/s/ George L. Van Doren
George L. Van Doren
United States Commissioner."

ance of the warrant . . . Hence, if those allegations on their face be inadequate, the warrant can by no possibility be legal.'" *Poldo, supra,* 55 F.2d at 868, quoting *Casino, supra,* 286 F. at 978. (emphasis omitted). In reaffirming this "four corners" approach, we join those other federal courts which recognize that under Rule 41(c) the written affidavit presented to the federal issuing officer and to the reviewing court must alone establish that probable cause exists.[3]

The present case illustrates the dangers inherent in allowing a commissioner to base his determination of probable cause on oral statements not embodied in the affidavit. There is considerable confusion here as to what exactly happened at the meeting with Commissioner Van Doren.[4] Postal Inspector Deyo testified that he believed he was under oath during the entire conference, while the Commissioner testified that he did not administer any oath until the affidavit was signed. Thus, the oath, when finally administered, covered only the truthfulness of the statements contained in the written affidavit and not the oral statements given to the Commissioner.[5]

It is clear that there was adequate time to include the oral statements in the written affidavit. While the inspector talked to the Commissioner, the Commissioner's wife (herself a commissioner) took down the affidavit in longhand. The inspector read the rough draft, approved it, and it was typed. The inspector then took the oath, read the affidavit again, and signed it. The entire process of obtaining the warrants for the car and the room took more than 30 minutes, with 20 to 25 minutes required to xerox the affidavit. All the participants knew, especially the postal inspector who read the affidavit three times, that the affidavit did not include the inspector's entire statement. Although there was some need for speed, there was adequate time to correct and enlarge the affidavit. This was not done. *Compare* Naples v. Maxwell, 393 F.2d 615 (6th Cir. 1968), where the state magistrate, determining that there was not probable cause in the original affidavit, further questioned the affiant officer, and wrote additional facts which disclosed probable cause onto the affidavit.

█ We, therefore, reaffirm the requirement that all facts and circumstances relied upon for the issuance of a federal warrant be found in the written affidavit. This ensures that the commissioner may judge for himself the persuasiveness of the precise facts relied on to show probable cause and that the reviewing court may determine whether the constitutional requirements have been met without reliance upon faded and often confused memories. The District Court erred in denying appellants' motion to suppress the evidence seized in Room 165.[6]

3. *See* United States v. Pinkerman, 374 F.2d 988, 989 (4th Cir. 1967); Rosencranz v. United States, 356 F.2d 310 (1st Cir. 1966); United States v. Freeman, 358 F.2d 459 (2d Cir. 1966); United States v. Sterling, 369 F.2d 799 (3rd Cir. 1966); United States v. Whitlow, 339 F.2d 975, 979 (7th Cir. 1964); Baysden v. United States, 271 F.2d 325 (4th Cir. 1959); United States v. Melville, 309 F.Supp. 829 (S.D.N.Y.1970); United States v. LaBerge, 267 F.Supp. 686 (Md.1967); United States v. Birrell, 242 F.Supp. 191 (S.D.N.Y.1965); Tripodi v. Morgenthau, 213 F.Supp. 735 (S.D.N.Y.1962); United States v. Walters, 193 F.Supp. 788 (W. D.Ark.1961). *Contra,* Leeper v. United States, 446 F.2d 281 (10th Cir. June 30, 1971).

4. The postal inspectors sought and obtained two search warrants, one for the green Chevrolet and one for Room 165. The affidavit was first typed for the room warrant; the affidavit for the car warrant was merely a xerox copy of this initial affidavit. Inspector Deyo read both affidavits before he signed them.

5. The Commissioner administered the following oath, "Do you swear under oath that the information given *in this affidavit* is true, to the best of your knowledge, so help you God?" (emphasis added).

6. Each Anderson and Loving has standing as a "person aggrieved" within Fed. R.Crim.P. Rule 41(e) to move for the suppression of the illegally seized evi-

We also reverse Loving's conviction because the evidence is inadequate to support a guilty verdict. In reviewing a guilty verdict, we must view all the evidence in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Nelson, 419 F.2d 1237, 1241 (9th Cir. 1969). However, the evidence here does not provide a factual basis upon which a jury could base a verdict of guilty beyond a reasonable doubt.

At most the evidence introduced at trial indicated that Loving had been seen driving the green Chevrolet. He was arrested in Room 165, which was not his room. The inspectors came to the door, knocked, and announced they were from the hotel management and wished to discuss the room bill. Loving attempted to depart through a rear sliding door, where a postal inspector told him to return to the room, which he did. After the inspectors were admitted, a search of the room uncovered the mail trays, pieces of mail, and plane tickets.

All this evidence, even indulging a presumption that Loving's actions at the rear door of the room connotated flight, is not sufficient to prove Loving had possession of the stolen mail. He did not have actual possession, and there is no evidence on which the jury could base a conclusion that he had dominion and control of the stolen mail and thus constructive possession. As we said in another context in Murray v. United States, 403 F.2d 694, 696 (9th Cir. 1968), ". . . '[M]ere proximity to the drug, mere presence on the property where it is located, or mere association, without more, with the person who does control the drug or the property on which it is found, is insufficient to support a finding of possession.'" Loving's connections with Anderson and his companion demonstrated, at most, that he knew them, used their rented car once, and visited their motel room. The evidence does not show beyond a reasonable doubt that he knew of the presence of the stolen mail in the room, or that he participated in the actual theft.

Both convictions are reversed.

---

dence. Anderson had rented and was staying in the motel room that was searched, and Loving was legitimately present there. Therefore both had standing under Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).