**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Patrick Earl BOWLER,
Defendant-Appellant.**

**No. 76–2713.**

United States Court of Appeals,
Ninth Circuit.

Sept. 30, 1977.

Michael E. Benchoff, Phoenix, Ariz., argued for defendant-appellant.

Daniel R. Drake, Asst. U. S. Atty., Phoenix, Ariz., argued for plaintiff-appellee.

Before BARNES and KILKENNY, Senior Circuit Judges, and EAST,* Senior District Judge.

EAST, Senior District Judge:

Patrick Bowler (Bowler) was indicted under six alleged counts of violating 18 U.S.C. § 1343, fraud by wire. The essence of the charges was that Bowler had used a "blue box"[1] to defraud the Mountain Bell Telephone Company (Bell) of money due for interstate telephone calls placed by Bowler.

After a hearing on Bowler's motion to suppress the use of certain evidence, the case was tried to the District Court without a jury which found him guilty on all counts.[2] Bowler was placed on four years probation as to each count with the requirement that he make restitution to Bell of $900.00.

On appeal, Bowler raises three issues regarding the admissibility of evidence. We affirm.

Bowler first came to the attention of Bell during an investigation of Donald Anderson, a fellow employee of Bowler's, for blue box toll fraud. An "Hekemian"[3] attached

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. The Bell Telephone System uses the 2,600 hertz cycle tone to control its long distance network. No such tone should be emitted from a private telephone at any time. A blue box emits a 2,600 cycle tone and is used to circumvent the toll call billing system of the phone company.

2. The District Court ordered that admissions made by Bowler prior to the administration of the *Miranda* warnings be suppressed; in all other respects the motion was denied.

3. An Hekemian is a device which records the number dialed, the date and the time a call originates and terminates. Upon detection of a 2,600 cycle tone, it also prints the information in red and starts a tape recorder which runs for less than two minutes. Thus, the Hekemian is designed to generate "paper tapes" which pro-

to Anderson's telephone showed that he had made several telephone calls to Bowler's number. David Burkhart, a security officer for Bell, placed a "snifter"[4] on Bowler's telephone solely because the Anderson tapes revealed the calls to Bowler's home. Bell maintained a common practice of checking out "known associates" of blue box users. The snifter revealed that 2,600 cycle tones were being emitted by Bowler's telephone and accordingly an Hekemian was attached thereto. The evidence gathered by it indicated illegal toll calls were being placed by Bowler. Burkhart then turned his information over to the Federal Bureau of Investigation.

Based on the information supplied by Burkhart, Agent Gwin of the F.B.I. obtained a warrant to search Bowler's home. Execution of the warrant led to the discovery of a blue box and statements were taken from Bowler before and after he received *Miranda* warnings.

■ Bowler first complains that no evidence was properly admitted against him because it was all derived from the use of the snifter which on the facts of this case constituted random monitoring in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, § 802, 18 U.S.C. § 2511(2)(a)(i) (1970).[5] However, this argument has no merit since the use of a snifter is not within the scope of Title III.

The snifter does no more than record each telephone emission of a 2,600 cycle tone characteristic of the illegal use of a blue box. The use of such a devise is not

restricted by § 2511(2)(a)(i) because "the right of privacy protected by the wire tap statutes goes to message content rather than the fact that a call was placed." *United States v. Goldstein*, 532 F.2d 1305, 1312 (9th Cir. 1976). This conclusion is further buttressed by a more recent decision of this Court. In *Hodge v. Mountain States Tel. & Tel. Co.*, 555 F.2d 254 (9th Cir. 1977), this Court noted that Title III only prohibits disclosure and use of communications which are "intercepted" within the meaning of the Act and that the term "intercept" covers only "aural acquisitions" of communications. *Id.* at 257. The Court then held "that the use of [a] pen register [does] not constitute a violation of Title III . . . . [b]ecause a pen register is incapable of making an aural acquisition of any communication . . . ." *Id.*

"A pen register records the numbers dialed from a particular telephone. It does not disclose the contents of any conversation nor does it indicate whether any calls were completed." *Id.* at 266, Hufstedler, J. concurring. In contrast, the snifter does not even record the number dialed and the appellant justly concedes that a snifter is "less intrusive than even a pen-register . . . ." Since the use of the more intrusive pen register is not governed by Title III, it follows that the use of the snifter is also outside the ambit of the Act.[6]

Bowler's second argument is that the search warrant was defective in that an attempt to correct an error in the description of the premises to be searched was "legally insufficient" and that the uncor-

---

vide a basis for restitution by supplying evidence that a toll call was made and indicating the parties involved.

**4.** The sole function of a snifter is to "peg a register" each time it detects a 2,600 cycle tone. It records neither the number called nor the content of any communications made.

**5.** Fourth Amendment standards are not involved in assessing the propriety of this action because Burkhart did not act in concert, under the direction or with the acquiescence of state or federal officials.

If, however, Bell violated the Act in obtaining the contents of any of Bowler's communications, 18 U.S.C. § 2511(1)(c) would make disclosure thereof unlawful and the introduction into evidence of the contents or any evidence derived therefrom would be prohibited by 18 U.S.C. § 2515.

**6.** Once Bell had the information supplied by the snifter, its action in attaching the Hekemian— which device is capable of making aural acquisitions of communications—clearly was not unlawful random monitoring as provided in 18 U.S.C. § 2511(2)(a)(i). *Goldstein*, 532 F.2d at 1313.

rected description failed to satisfy the particularity requirement of the Fourth Amendment. The search warrant and supporting affidavit described the physical appearance of Bowler's residence and listed the street address as 38 35 West Diana Avenue, Phoenix, Arizona. However, the true street address was 33 35 West Diana Avenue. Prior to the execution of the warrant, Agent Gwin noticed the error and brought it to the attention of the issuing magistrate who promptly corrected the affidavit and the warrant.

Bowler claims that the actions of Agent Gwin constituted "oral testimony" not sworn and made a part of the affidavit as required by Fed.R.Crim.P. 41(c) and *United States v. Anderson*, 453 F.2d 174 (9th Cir. 1971). The flaw in Bowler's argument is that the accurate information was properly before the magistrate at the time the correction was made. The correct street address was specified in a "Statement of Probable Cause" which was physically attached to and incorporated into the affidavit. Thus, the correct address had been properly sworn to before the magistrate. *United States v. Buschman*, 386 F.Supp. 822, 829 (E.D.Wis.1975), aff'd, 527 F.2d 1082 (7th Cir. 1976).

 The District Court found the magistrate had merely corrected a "clerical error." It appears and we agree that the District Court rightly concluded that the correct address was specified in the "Statement of Probable Cause" and that a typographical error in the first part of the affidavit was carried over to the search warrant. Corrections of such errors are perfectly proper. *United States v. Keach*, 480 F.2d 1274, 1284–85 (10th Cir. 1973); *United States v. Pittman*, 439 F.2d 906, 909 (5th Cir.), *cert. denied*, 404 U.S. 842, 92 S.Ct. 138, 30 L.Ed.2d 77 (1971). Neither the Fourth Amendment nor Rule 41(c) nor *Anderson*

nor common sense requires a person to be sworn or resworn before bringing a typographical error to the attention of the issuing magistrate prior to the execution of the warrant where the correct information is already properly before him.[7]

 Bowler's final contention is that the statements he made after the administration of the *Miranda* warnings were not properly admitted because they were tainted by statements improperly adduced before the warnings were given. The District Court found that Bowler not only understood his rights but exercised them intelligently, freely and voluntarily, answering some questions while refusing to answer others. This finding, which was based upon evidence brought out at the hearing on the motion to suppress, involved a determination of the credibility of conflicting testimony and consideration of Bowler's age, education, mental condition and articulateness, as well as the particular setting in which the statements were given. We are not convinced that "the conditions that rendered the pre-warning admissions inadmissible carried over to invalidate [his] subsequent confession." *United States v. Toral*, 536 F.2d 893, 896 (9th Cir. 1976).

The judgment of conviction and suspended sentence of Bowler entered by the District Court on July 19, 1976 is affirmed.

AFFIRMED.

---

7. Since we hold that the description of the premises to be searched was properly corrected, we need not discuss Bowler's further contention that the description, uncorrected, was inadequate.