

**FILED**
June 01, 2026 08:44 AM
SX-2025-CR-00197
**TAMARA CHARLES**
**CLERK OF THE COURT**

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| PEOPLE OF THE VIRGIN ISLANDS, ) | |
| ) | |
| Plaintiff, ) | CASE NO. SX-2025-CR-00197 |
| ) | |
| v. ) | |
| ) | |
| KENNY ROGERS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**2026 VI Super 25**

**JASMINE GRIFFIN, ESQ.**
Assistant Attorney General
Virgin Islands Department of Justice
St. Croix, V.I.
Counsel for the Plaintiff

**KYE WALKER, ESQ.**
The Walker Legal Group
St Croix, V.I.

### MEMORANDUM OPINION AND ORDER

¶1    **THIS MATTER** comes before the Court on Defendant Kenny Rogers' ("Rogers" or "Defendant") Motion to Quash DNA Search Warrant, and the People's Opposition thereto. Also before the Court is the People's Motion to Compel the Defendant to submit to buccal swabbing in accordance with the warrant issued by the magistrate judge. The Court held an evidentiary hearing on the Defendant's motion on May 4, 2026, and a follow up conference on May 8, 2026, at which the Defendant was permitted to supplement the record. As bases for the Motion to Quash, the defense argues the warrant was unlawful where: 1) the investigating officer sought a warrant for a DNA sample despite already having collected such DNA sample through the booking process and materially misrepresented facts in her affidavit in that regard; 2) the warrant was unsupported

by probable cause.[1] For the following reasons, the Defendant's Motion to Quash will be **GRANTED** and the People's Motion to Compel **DENIED as moot**.

## BACKGROUND

¶2      On August 16, 2025, Police Detective Sarah Velez responded to a shooting incident at #40-EBA La Grange, Frederiksted that left one person injured. *See* Pl's Exh. 1, Probable Cause Aff. of Velez at 1, ¶ A-B. Upon arrival at the scene of the shooting, police found Maria Gonzalez-Marte, the resident of 40 EBA LaGrange, lying on the ground with several gunshot wounds to her back. *Id.* Gonzalez-Marte and a relative who was present at the time of shooting identified the Defendant as the perpetrator. The Defendant was also identified as the victim's boyfriend. *Id.* at 2. Defendant Rogers, who was not at the scene when police arrived, was determined to have three licensed firearms. *Id.* at 2, ¶ E.

¶3      On August 17, 2025, police obtained and executed a telephonic search warrant to search Defendant's residence, at #51 New Works, Frederiksted. *Id.* at 2, ¶ G. During that search, police recovered one shotgun with six rounds, a small silver firearm magazine, one spent shell casing, one shotgun barrel, a DVR, a safe, and three bags of an unknown substance. *Id.* at ¶ I. Police issued a wanted poster for Rogers on August 17, 2025. On the same date, Defendant turned himself in to police, voluntarily surrendered two licensed firearms and was arrested. *Id.* at 3, ¶ J-K. Prior to his booking, Officer Velez sought Rogers' consent to provide a DNA sample for investigatory purposes, through buccal swabbing; Rogers declined. *Id.* at 3, ¶ K; Test. of Velez. However, Rogers was subsequently booked, and police collected a DNA sample from him pursuant to the Virgin Islands DNA Database and Databank, 5 V.I.C. § 4201 *et. seq. See* Def.'s Exh. 1.

¶4      Officer Velez subsequently sought a DNA search warrant to compel Rogers to submit to buccal swabbing for investigatory purposes. The probable cause affidavit in support of that request discussed, at length, the alleged crime and the subsequent search of Defendant's home, pursuant

---

[1] In its written motion, the defense also challenged the *ex parte* request and issuance of a search warrant, while defendant was represented. Defendant offered no argument on this point at the hearing and appeared to abandon that argument. However, to the extent not abandoned, the argument is rejected, as warrant requests are necessarily *ex parte;* the defense has offered no legal authority to suggest a different standard should be applied in this instance.

to a telephonic warrant and listed, in detail, the items seized during that search. Pl's Exh. 1. The affidavit then concluded with a request for a DNA warrant, as follows:

> That it is necessary to obtain DNA sample, buccal swabbing from Mr. Kenny Rogers for investigative purposes and comparison to the evidence collected from the aforementioned crime scene.

> That given the aforementioned facts, the affiant respectfully request this Honorable Court to issue an order for Mr. Kenny Rogers to submit his DNA sample, by submitting to buccal swabbing at the Virgin Islands Police Department, for purpose of comparing it to item recovered from the crime scene. [sic]

*Id.* at 3, ¶ L, M. While the probable cause affidavit indicated that evidence was collected at the scene of the shooting for comparison purposes, it did not identify the nature of that evidence. Officer Velez also did not disclose in her affidavit that the defendant had submitted to buccal swabbing, to provide a DNA sample as part of the booking process. The affidavit also identified Rogers' residence only as 51 New Works; the defense contended for the first time at the hearing that the LaGrange address where the incident occurred is also Rogers' residence, and that fact was not disclosed to the magistrate judge. The magistrate judge issued the DNA search warrant.

¶5     The Defendant subsequently filed the instant Motion to Quash and a Motion to Stay; the Court granted the motion to stay pending the Court's resolution of this dispute. As grounds for the Motion to Quash, the Defendant argues the officer misrepresented facts in the probable cause affidavit, including: her omission of the fact that police had already collected a prior DNA sample at booking; that Rogers had complied with that DNA sample collection during the booking process, despite the officer's representation that he had declined buccal swabbing, and; that the warrant was issued without probable cause. The People opposed the motion and also filed a Motion to Compel.

¶6     This Court scheduled an evidentiary hearing, at which Officer Velez acknowledged, in testimony, her failure to disclose the existence of an untested DNA booking sample in her warrant affidavit. She explained, however, that she had excluded that information because she deemed it irrelevant, as police practice and procedure prohibited use of the sample collected at booking for investigatory purposes. Velez further acknowledged her representation in her affidavit that the Defendant had refused to submit to buccal swabbing, despite the Defendant having submitted to such swabbing during the subsequent booking process. Again, Velez indicated she also did not believe that fact was relevant, for the reasons stated above.

## DISCUSSION

¶7    Defendant challenges the lawfulness of the warrant issued in this case, on grounds: police already had available for use a DNA sample collected from the Defendant at booking, pursuant to local law; the officer misrepresented, directly and by omission, material facts in the probable cause affidavit, and; because there was not a sufficient factual link of the requested DNA sample to comparison evidence found at the crime scene.  Each will be considered, in turn.

### A.  *Legal Standard*

¶8    The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures and requires that warrants issue only upon probable cause. *See* U.S. CONST. amend. IV; *see also* V.I. R. Crim. P. 41.  Compelled buccal swabbing "involves an intrusion into the human body" and, thus, constitutes a search that requires a warrant. *Schmerber v. California*, 384 U.S. 757, 770 (1966) (holding that, just as "[s]earch warrants are ordinarily required for searches of dwellings ... absent an emergency, no less could be required where intrusions into the human body are concerned.");

¶9    Probable cause exists for a search where, "given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or *evidence of a crime* will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (emphasis added)).  Such determination is to be made in light of the "totality of the circumstances" before the magistrate judge. *Id.; see also, Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).  As our courts have made clear, "To determine probable[ ] cause a judge or magistrate judge 'must make a practical common sense decision whether given all the circumstances set forth in the affidavit before him . . . there is fair probability that contraband or evidence of a crime will be found in a particular place.'" *People of the V.I. v. Cumberbatch*, 2026 VI 7, 16, 2026 V.I. Supreme LEXIS 12, *14 (V.I. 2026) (quoting *People v. John*, 52 V.I. 247, 255-56 (V.I. 2009); *United States v. Shields*, 458 F.3d 269, 277 (3rd Cir. 2006); *United States v. Brown*, 828 F.3d 375, 381 (3rd Cir. 2016) (quoting *Gates*, 462 U.S. at 238 (1983)).

### B.  *The Officer Properly Sought a Warrant, Despite a DNA Sample Collected at Booking.*

¶10    Before turning to the ultimate issue whether there was probable cause for the DNA warrant, the Court finds it necessary to address the Defendant's challenge to the lawfulness of the warrant based on the officer's prior collection of a DNA sample as part of the booking process.  This Court

must reject the Defendant's argument that the buccal swabbing to which he submitted at booking, pursuant to applicable law, could have been used for investigatory purposes in the case and thus rendered the warrant for additional swabbing unlawful.

¶11    The defense argues the applicable statutory scheme, 5 V.I.C. § 4201 *et. seq.,* provided officers broad authority to utilize DNA samples collected as part of the booking process for investigatory purposes, thereby obviating the need for a warrant in this instance. The defense argues that because there existed a DNA sample collected at booking, there was no probable cause for the warrant to require that Defendant submit to a second buccal swab. Even assuming, for the sake of this argument, that the defense accurately recounts the investigatory purpose and import of the statute, it cannot be gainsaid that such authority for a warrantless search would defeat probable cause for a warrant or that the People should now be penalized for seeking a warrant under the well-established standards set forth above.

¶12    While buccal swabbing has been approved under appropriate statutory authority as an appropriate booking/administrative requirement, such swabbing is nonetheless recognized as a bodily intrusion – albeit a minimal one – that is protected under the Fourth Amendment; thus, the required authority for such intrusions is by obtaining a warrant. *See, e.g., Schmerber,* 384 U.S. at 769-770; *People of the V.I. v. Hardcastle,* 55 V.I. 93, 96-97 (Super. Ct. 2011) (DNA samples may be obtained by warrant, not motion); *compare Maryland v. King,* 569 U.S. 435(2013) (upholding statute permitting buccal swabbing at booking, for limited identification purposes). It bears restating that the Fourth Amendment, and cases decided thereunder, guards against unreasonable searches and requires a warrant in particular instances. And, importantly, there remains a well-settled preference for search warrants, which permit requests for governmental intrusions in areas protected by the Fourth Amendment to be vetted by a neutral judicial officer. That said, there is little support for the converse argument that the People violates the Fourth Amendment by seeking a warrant where none *may* have been required. To impose such a standard would turn Fourth Amendment jurisprudence on its head.

¶13    Moreover, nothing in the statutory scheme on which the defense relies alters the requirement that such bodily intrusions must be authorized by a warrant, in any event. *See, Schmerber,* 384 U.S. at 769-770; *Hardcastle,* 55 V.I. at 96-97. By way of background, the Virgin Islands DNA Database and Databank, codified in V.I. Code tit. 5, § 4201 *et. seq.,* was first enacted

in 2010 to require DNA collection from convicted persons. That law was later amended in 2016 to also authorize the collection of DNA samples, through buccal swabbing, from certain offenders <u>charged</u> with designated felony or violent offenses as defined in the statute. *Id.* at §§ 4201, 4203 (e); 2016 V.I. ALS 7871, 2016 V.I. SESS. LAWS 7871, V.I. Act 7871, 2016 V.I. Bill 0260 (March 30, 2016) (amending sections 4201 and 4203 of the statute). On its face, the statutory scheme, as amended, permits DNA testing of persons charged with certain offenses for the limited purpose of ensuring identification of the person before the justice system and maintaining a databank for use in identifying such offenders through comparison in a database. *See Id.* at §§ 4201, 4203 (a). In that regard, the statute mandates, in pertinent part, that all such charged offenders "shall submit a DNA sample . . . to determine identification characteristics specific to that person and to be included in the Database" – defined as a repository of DNA samples collected under the statute. *Id.* at 4203 (a)-(b), 4201 (c)-(d). The statute further requires that all DNA samples collected be forwarded for analysis and confidentially retained, in the manner outlined in the statute. *Id.* at 4207. The statute specifies the purposes for which DNA collected under the statute may be disclosed or utilized, to include, as relevant here:

> [To] territorial and federal criminal justice and law enforcement and prosecuting agencies, including forensic laboratories serving such agencies, **for identification purposes in order to further official criminal investigations or prosecutions**; except, that any DNA sample obtained directly from a person **not otherwise required to submit a DNA sample under this chapter and delivered to the Director for comparison with DNA records in the Database must be obtained pursuant to a warrant.**

5 V.I.C. § 4207 (a)(3) (emphases added).

¶14    This Court agrees that, at first blush, the statutory reference to furthering "official criminal investigations or prosecutions" in section 4207, when viewed in isolation, could appear to permit the broad use of DNA samples collected at booking for evidentiary purposes in the case in which it is collected. However, the plain language of the statute and the full statutory scheme do not bear that out. In that regard, the statute makes clear that the DNA collection permitted thereunder is for the purpose of identifying designated offenders, as defined in the statute, and to maintain such identifications in a database. *See id.* §§ 4201, 4203 (a)-(e). Such DNA sample must then be forwarded to the Director, who is required to obtain testing and analysis and thereafter file and

store the results in Virgin Islands DNA Database. *Id.* at § 4203; *compare King*, 569 U.S. at 449-451(noting that, "The task of identification necessarily entails searching public and police records based on the identifying information provided by the arrestee to see what is already known about him. The DNA collected from arrestees is an irrefutable identification of the person from whom it was taken.").

¶15    Section 4207, quoted above, further makes clear that any additional DNA collection not otherwise mandated under the statute, for comparison purposes in the databank, must be obtained only pursuant to a warrant. 5 V.I.C. § 4207 (a)(3). It is also significant that the DNA sample required at booking, under the local statute, is not voluntary but, rather, compelled under threat of criminal punishment. *See* 5 V.I.C. § 4203 (f). Giving effect to the plain language of the statute and the statutory scheme as a whole, as we must,[2] the statute makes it abundantly clear that it is merely a mechanism for obtaining and maintaining records in a databank for comparison and identification purposes, similar to that approved by the U.S. Supreme Court in *King*. The DNA sample collected pursuant to the statute is, thus, merely a booking procedure. And, while such booking procedures have traditionally been exempt from warrant requirements because of their limited purposes, *see e.g., King*, 569 U.S. at 465-66 (discussing booking procedures as exempt from warrant requirement), nothing in the statute purports to erode or alter the protections afforded the accused against warrantless bodily intrusions under the Fourth Amendment. To broadly construe the booking process authorized in Title 5, Section 4201 *et. seq.* as an investigative tool for police beyond that contemplated in the statute would run afoul of the Fourth Amendment.

## C. The Officer's Factual Omissions Were Not Material.

¶16    The Court also rejects the Defendant's argument that the DNA warrant was based on misrepresentations and omissions by the investigating officer in the probable cause affidavit supporting the warrant and must, therefore, be quashed. Specifically, the Defendant argues the officer intentionally omitted from the probable cause affidavit the fact that he had already submitted to buccal swabbing at booking and also misrepresented that Defendant had refused to

---

[2] *See, e.g., In re Infant Sherman*, 49 V.I. 452, 463 (V.I. 2008) (discussing requirement that courts honor the unambiguous plain language of a statute and apply the statute and the statutory scheme, as a whole).

submit to buccal swabbing. As the defense challenges the veracity of the officers' statements on the warrant application, this Court applied a *Franks* standard to this challenge.[3]

¶17    In this instance, Officer Velez acknowledged in testimony that she did not disclose in her affidavit that police had conducted buccal swabbing at the time of the Defendant's booking, based on her understanding that practice and procedures precluded police from utilizing DNA samples collected at booking pursuant to 5 V.I.C. § 4201 *et. seq.*, for investigatory purposes and without first obtaining a warrant. For the same reasons, Officer Velez further explained that she indicated the Defendant's refusal to consent to buccal swabbing requested for investigative purposes, despite his having later submitted to buccal swabbing at booking. However, those factual omissions or discrepancies cannot be said to be material, in light of the Court's conclusion in the preceding section, that police cannot use DNA samples collected at booking under the statute for investigative purposes, in any event.

### D. The Affidavit Provided Insufficient Facts for the Finding of Probable Cause

¶18    The Court must now determine whether the facts, as stated in the warrant affidavit, provide a sufficient basis for the magistrate judge to find probable cause for the DNA warrant. They do not.

---

[3] *See Franks v. Delaware*, 438 U.S. 154, 155, 164 (1978). Thus, where, as here, a defendant challenges the truthfulness of factual assertions made in a warrant application, the defendant must establish: (1) that the affiant police officer made a false or misleading statement on a fact that is necessary to the finding of probable cause, knowingly and intentionally, or with reckless disregard, and (2) that statement was material to the finding of probable cause in support of the warrant. *Franks,* 438 U.S. at 155-56; *compare People v. Osorio*, Super. Ct. Crim. No. 0139/2020 (STX), 2025 V.I. LEXIS 1, at *8-10 (Super. Ct. Jan. 22, 2025). Under that standard, "negligence or innocent mistake" is "insufficient" to meet this scienter requirement. *See Franks* 438 U.S. at 171; *see also U.S. v. Yusuf*, 48 V.I. 980, 991-92 (D.V.I. 2006). Rather, what is required is deliberate falsity or the officer's reckless disregard for the truth, as reflected in an officer's omission of "facts that any reasonable person would know that a judge would consider in granting a warrant application." *Osorio*, 2025 VI SUPER at *10 (citing *People of the V.I. v. George*, Super. Ct. Crim. No. 0085/2016 (STT), 2016 V.I. LEXIS 135, at *5 (Super. Ct. Sep. 6, 2016)). The materiality element is met only if, after extricating the allegedly false statements or inserting omitted facts the magistrate judge would have considered, probable cause is not shown. *See Osorio*, 2025 V.I. LEXIS at *16. In sum, the Court must determine whether, *but for* the misrepresentation/omissions, the magistrate could not have found probable cause for issuance of the warrant. To be sure, an officer is not required to include in a probable cause affidavit every fact she knows about the case; however, an officer may not omit facts that a reasonable person would know a magistrate would consider in determining whether probable cause exists on the warrant. *See id.* (determining that deliberate omission of statements by an informant that were false were improperly omitted, as they bore on the informant's credibility).

¶19     As the standards earlier outlined make clear, what is required for probable cause for a DNA warrant is a showing, based on consideration of the totality of the circumstances before the Court, that there exists a fair probability that the search would uncover contraband or evidence of a crime. *See Cumberbatch,* 2026 V.I. at 16; *Gates,* 462 U.S. at 238-39. However, the totality of the circumstances test articulated in *Gates* is not "standardless." *Mass. v. Upton*, 466 U.S. 727, 731, 104 S. Ct. 2085, 2087 (1984). As the U.S. Supreme Court has explained, "[t]he interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence *might* be obtained." *Schmerber*, 384 U.S. at 769-770 (emphasis added).

¶20     While this Court is aware of no mandatory authority in this jurisdiction directly addressing what is required to establish a "fair probability that contraband or evidence of a crime will be found in a particular place" to satisfy probable cause for a search for DNA evidence, several courts have addressed this issue in analogous cases. Those decisions have all found that an affidavit provides a sufficient basis for a DNA warrant where there is established some nexus between the compelled DNA and evidence collected at the scene of the crime.

¶20     In *Olive*, the trial court was required to determine whether a DNA warrant should be quashed for lack of probable cause, where the affidavit alleged only that a firearm was collected at the crime scene and swabbed, but failed to confirm the presence of DNA. *People of the V.I. v. Olive*, 70 V.I. 375, 381 (Super. Ct. 2019). The court considered the facts surrounding the defendants' arrest, specifically: that a firearm reported stolen in Georgia was discovered in the vehicle in which the defendant and another passenger rode, where neither occupant was licensed to possess that firearm, and both were charged with unlawful possession of that firearm. *Id.* Based on the foregoing facts, the *Olive* Court upheld a finding of probable cause, holding it was sufficient that the defendants' DNA would be compared with DNA that may be on the weapon. *Id.* In reaching that determination, the Court held it would be an absurd application of the law to require that a finding of probable cause for a DNA warrant requires that DNA collected at the crime scene first be forensically tested before a warrant could issue. *Id.* at 381-82.

¶21     In *People of the V.I. v. Turnbull*, 61 V.I. 46, 53 (Super. Ct. 2014), the trial court appeared to reach a markedly different result. However, the facts in *Turnbull* are distinguishable from Olive and the case at bar. Unlike the court in *Olive*, which heard the probable cause issue on motion to

quash, the *Turnbull* decision arose from the court's determination on a warrant request, in the first instance, and far removed in time from the crime. There, the People sought to compel buccal swabbing of the defendant two years after his arrest, by filing a motion to compel along with an affidavit. Construing the motion and accompanying affidavit as a warrant, the Court found the *affidavit* failed to establish probable cause, as there were no facts to establish that the defendant's DNA will link him to a criminal act. *Id.* However, central to the court's determination in that regard was the absence of language in the officer's affidavit, which was otherwise present in the accompanying Motion to Compel and which the court appeared to find sufficient were it not misplaced, as set forth below:

> The People's motion to compel indicates that '[t]he purpose of the buccal swab would be to compare to a swabbing already taken from the firearm recovered on November 28, 2011 from the vehicle being driven by Defendant Jerome Turnbull.' However, this Court is constrained to the four corners of Detective Joseph's affidavit in determining whether probable cause exists. According to Detective Joseph, the buccal sample "will be compared to any DNA that *may* be on [the firearm]." Significantly, Detective Joseph's affidavit does not indicate that a comparison DNA sample has been recovered from the MAC-11.

*Turnbull*, 61 V.I. at 53-54 (internal citations omitted). The *Turnbull* court therefore determined that, "absent evidence of such a [DNA] sample in Detective Joseph's supporting affidavit," there was no showing of a probability that buccal swabbing would link the defendant to criminal activity. *Id.* Ultimately, that court found deficient the statement in the affidavit that comparison DNA "may be" on evidence collected, in the absence of facts to establish that swabbing had already been taken from the firearm found at the scene.

¶22    In light of the two-year period that had elapsed since the defendant's arrest, and the court's distinction between the statements made in the sworn affidavit and those made in the motion to compel, which the court cited with approval, this Court does not read *Turnbull* to require that the nexus to support probable cause requires that the officer first establish that a DNA sample was both collected from the scene *and* forensically tested before a warrant for buccal swabbing may be obtained to swab the defendant, as Defendant argued in this case. The court's holding falls short of requiring such a showing. However, to the extent *Turnbull* may be viewed as requiring that there must first be DNA collected at the scene and forensically tested, to support probable cause for a DNA warrant, this Court must depart from that decision. To be sure, while this Court

also disagrees with *Olive* to the extent its broad language suggests that mere conclusory facts in an affidavit are sufficient to establish probable cause for a DNA warrant, that Court appears to have appropriately considered and applied the totality of the circumstances in determining whether the DNA warrant was lawful.

¶23     Other courts addressing this issue have similarly determined that a factual nexus to the forced collection and evidence collected at the scene is required.[4] While courts considering this issue may differ in the extent of the factual link required to establish probable cause for a DNA warrant – i.e. whether evidence at the scene must have been tested, swabbed, testable or simply available for later testing and comparison -- what is clear is a factual link must, in fact, be shown.

¶24     Here, the probable cause affidavit fails to assert facts that, viewed in totality, indicate there is a fair probability that the Defendant's DNA would be linked to evidence of a crime.  At the outset, the affidavit establishes, at best, that a crime was committed, as it indicates a person was shot, the shooting occurred at the home of the victim, and the victim and another witness identified

---

[4] *See, e.g, State v. Campbell*, 2015 Del. Super. LEXIS 525, *13-16, 2015 WL 5968901 (Del. Super. Ct. 2015)(holding that decisions requiring pre-testing of collected DNA to support probable cause for a warrant go too far; but holding that an affidavit must state more than an officer's mere conclusion that DNA may be recovered); *United States v. Solomon*, 2007 U.S. Dist. LEXIS 21434, *12-13, [WL], at *4 (W.D. Pa. 2007) ("where there was probable cause to believe that defendant handled the 9mm Glock  handgun used in a homicide, and from which a DNA "swipe" had been obtained, affidavit alleged facts sufficient to establish probable cause that defendant's genetic material would be linked to evidence from the crime"); *People of the Virgin Islands v. Hardcastle*, 55 V.I. 93, 97 (Super. Ct. 2011) (citations omitted) (citing *United States v. Bonds*, 12 F.3d 540, 549 (6th Cir. 1993) (affirming magistrate judge finding of probable cause to issue a search warrant for blood and hair samples when affidavit established that DNA could link the suspect to blood stains found in a car used in connection with a homicide)); *compare United States v. Flanders*, 2010 U.S. Dist. LEXIS 96752, *9-10 (D.V.I. 2010)(reversing a DNA warrant where there was testimony regarding evidence recovered from the crime scene and  regarding locations where the defendants, but where the magistrate judge made no finding that the DNA samples could link the defendants to the crimes charged); requiring a showing that the individual's DNA can link the individual to a criminal act)(citations omitted)); *United States v. Allembert*, 2023 U.S. Dist. LEXIS 85915, *11-12 (D.V.I. 2023)(finding probable cause for DNA warrant where the facts as set out in affidavit, in totality, linked the defendants to the discarded firearm and established that DNA could link the defendant to criminal activity); *State v. Riley*, 2019 Del. Super. LEXIS 295, *6-11, 2019 WL 2539280 (Del. Super. 2019)(considering totality of evidence in affidavit, and reasonable inferences therefrom, of the magistrate judge, in determining there is a fair probability the defendant's DNA may be linked to a crime/contraband; noting that  automatic rejection of probable cause based solely on whether there was DNA collected at the scene is disfavored, and courts should rely instead on whether evidence as a whole establishes a "fair probability" that the seized DNA sample can be linked to a crime) (collecting cases); *People of the V.I. v. Carty*, 2010 V.I. LEXIS 59, *10 (V.I. Super. Ct. 2010) (holding there was a reasonable probability that a gun constructively possessed by two persons could contain DNA from a compelled sample).

the Defendant as the perpetrator. The affidavit does not indicate what, if any, evidence was collected at the scene of the shooting with which the Defendant's DNA can be compared. The only reference to evidence collected at the crime scene is the conclusory statement, in the prayer for relief, as follows: "That it is necessary to obtain DNA sample, buccal swabbing from Mr. Kenny Rogers for investigative purposes and comparison to the evidence collected from the aforementioned crime scene." *See* Pl's Exh. 1, at ¶ L. The affidavit further states, "That given the aforementioned facts, the affiant respectfully request this Honorable Court to issue an order for Mr. Kenny Rogers to submit his DNA sample, by submitting to buccal swabbing . . . for purpose of comparing it to item [sic] recovered from the crime scene." *Id.* at ¶ M.

¶25   Absent from the affidavit is any indication of the nature of any evidence found at the scene of the shooting that would provide a sufficient basis for finding there is a fair probability that compelled DNA would be linked to the crime, for example, evidence as may be amenable to DNA testing or that DNA was collected on scene. In that regard, the affidavit outlines, in detail, the facts surrounding the report of an August 16, 2025 shooting incident and the subsequent search of the Defendant's home on August 17, 2025, pursuant to a telephonic search warrant. Pl's Exh. 1, at 1-2. The officer then itemizes, in detail, the items/evidenced seized from the Defendant's home, in paragraph I of the affidavit; those items included shell casings and a shotgun. Inexplicably, unlike the itemized list of items recovered from the Defendant's home during the search, the affidavit does not similarly identify what, if any, evidence was collected at the scene of the shooting. And, while the affidavit is silent on those issues, Officer Velez testified at the hearing that evidence, including a gun holster, was collected at the scene of the crime. However, this Court's determination of whether there was a sufficient basis for probable cause for the warrant is limited to that "contained within the four corners of a written affidavit" that was before the magistrate judge. *See, e.g., Turnbull*, 61 V.I. 52 (quoting *United States v. Anderson*, 453 F.2d 174, 175 (9th Cir. 1971)); *compare Gates*, 462 U.S. at 238, *Upton*, 466 U.S. at 728.[5]

---

[5] Moreover, it is not even clear to what "scene" the officer was referring in the affidavit or where the comparison evidence referenced in the conclusory paragraphs, L and M of the affidavit, was collected. Indeed, much of the affidavit is dedicated to discussion of the search of Defendant's home, which the officer also referred to as "the scene". Pl's Exh. 1, ¶ I. Almost immediately following that recitation, in paragraph L, the officer concludes that the Defendant's DNA sample is needed to compare with evidence at the "aforementioned crime scene." *Id.* at ¶¶ L, M. It is, therefore, apparent, as the defense argued, that the only

¶26    Viewing the facts in totality, and mindful of its responsibility to avoid a "hypertechnical" interpretation of the affidavit,[6] this Court finds the affidavit contains insufficient facts from which the magistrate judge could have determined there was a nexus between the Defendant's compelled DNA swabbing and the crime. Rather, the affidavit includes only a bare conclusory statement that buccal swabbing is necessary "for investigative purposes and comparison to the evidence collected from the *aforementioned crime scene*" and indicates that such swabbing is "for purpose of comparing it to item recovered from the crime scene." Pl's Exh. 1, ¶¶ L, M.  Accordingly, the DNA warrant must be quashed.

## CONCLUSION

For the foregoing reasons, the Court will grant the Defendant's Motion to Quash the DNA warrant issued by the magistrate judge on August 26, 2025. Moreover, considering this Court's ruling quashing the DNA warrant, the People's Motion to Compel the defendant to submit buccal swabbing, pursuant to the warrant, will be denied as moot.

HON. VENETIA HARVEY VELAZQUEZ
**Judge**

**ATTEST:**
**TAMARA CHARLES**
Clerk of Court
BY: _Larlom Canton_
Court Clerk II  6/2 /26

---

comparison evidence to which the affidavit points is that seized from the Defendant's home. It is also worth noting that the affidavit indicates the Defendant held three firearm licenses in the Territory, and there is nothing to indicate that the items recovered from his home during the search constituted a crime.

[6] *See Gates,* 462 U.S. at 288-89; *United States v. Ventresca,* 380 U.S. 102, 109 (1965); *compare United States v. Hodge,* 246 F.3d 301, 305 (3d Cir. 2001).